**DEPPMAN v. MURRAY, Director of the Department of Public Works of Washington, et al., and three other cases.**

**Nos. 503–505, 507.**

District Court, W. D. Washington, S. D.

Jan. 18, 1934.

In case No. 503:

Edward D. Phelan, Will Lanning, Edwin H. Flick, and Herald A. O'Neill, all of Seattle, Wash., for plaintiff.

G. W. Hamilton, Atty. Gen., and W. J. Lindberg, Asst. Atty. Gen., for defendants.

In case No. 504:

Edward H. Chavelle and Vanderveer & Bassett, all of Seattle, Wash., for complainants.

G. W. Hamilton, Atty. Gen., W. J. Lindberg, Asst. Atty. Gen., and Robert M. Burgunder, Pros. Atty., and Arthur M. Hare, Dep. Pros. Atty., both of Seattle, Wash., for defendants.

In case No. 505:

E. D. Phelan, Will Lanning, Edwin H. Flick, and Herald A. O'Neill, all of Seattle, Wash., for complainants.

G. W. Hamilton, Atty. Gen., W. J. Lindberg, Asst. Atty. Gen., and Robert M. Burgunder, Pros. Atty., and Arthur M. Hare, Dep. Pros. Atty., both of Seattle, Wash., for defendants.

In case No. 507:

Edward H. Chavelle and Vanderveer & Bassett, all of Seattle, Wash., for complainant.

G. W. Hamilton, Atty. Gen., and W. J. Lindberg, Asst. Atty. Gen., for defendant.

Fabian B. Dodds, of Spokane, Wash., amici curiæ.

In all cases:

Yantis & Brodie, of Olympia, Wash., and Reuben C. Carlson, of Tacoma, Wash., amicus curiæ.

Before WILBUR, Circuit Judge, and CUSHMAN and NETERER, District Judges.

CUSHMAN, District Judge.

In these suits the unconstitutionality is asserted of chapter 166 of the Washington Laws 1933, pp. 613–629 (Rem. Rev. Stat. Wash. §§ 6381—1 to 6381—38), and chapter 111 of the Washington Laws 1921 (page 338), as amended (Rem. Rev. Stat. Wash. §§ 6387–6397, also 1933 annual pocket part, §§ 6388 and 6390).

The laws attacked relate to transportation of persons and property by motor vehicles over the public highways of the state.

On account of the denials and allegations of the answers, the limited extent of the stipulations, and the conclusion reached by the court, it will not be necessary to point out all of the particulars wherein the suits differ.

It is not necessary to state at length the statute of 1921 as amended. It is a statute regulating auto transportation companies—common carriers—operating over public highways between fixed termini or over a regular route. This statute, it is provided, does not apply to the exclusive transportation of agricultural, horticultural, or dairy or other farm products from the point of production to the market. Rem. Rev. Stat. Wash. § 6387 (d). A transportation company is required by this law to obtain a certificate of public convenience and necessity. Rem. Rev. Stat. Wash. § 6390, 1933 annual pocket part.

In chapter 166 of the Washington Laws of 1933, the Legislature undertook to extend the regulation of motor vehicle transportation to include what in that act are denominated as the "contract hauler," "for hire carrier," and the "private carrier." In chapter 166 of the Laws of 1933, the "auto transportation company" of the earlier act is described as a "certified operator." Rem. Rev. Stat. Wash. § 6381—1 (e).

Material provisions of chapter 166 (sections 1–3, Rem. Rev. Stat. Wash. §§ 6381—1 (f, g), 6381—2, 6381—3), in so far as they apply to "contract haulers," are as follows:

"Section 1. * * *

"f. The term 'contract hauler' means every person owning, controlling, operating or managing any motor vehicle used in the business of transporting property for compensation, other than as a certified operator, over any public highway between fixed termini or over a regular route: * * * Provided, That the term 'contract hauler' shall not include any person owning, controlling, operating, or managing any motor vehicle operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market.

"g. The words 'between fixed termini' or 'over a regular route' mean the termini or route between or over which any contract hauler usually or ordinarily operates any motor vehicle, even though there may be departures from said termini or route, whether such departures be periodic or irregular. Whether or not any motor vehicle is operated by any contract hauler 'between fixed termini' or 'over a regular route' within the meaning of this act shall be a question of fact.

"Sec. 2. No person, except he be a certificated operator, shall engage in the business

of transporting property by motor vehicle for compensation over any public highway between fixed termini or over a regular route, unless such person prior to engaging in such business make a written contract or contracts with all persons for whom such transportation is to be furnished clearly stating the agreed compensation for such transportation, and prior to engaging in such business shall file such contract or contracts with the department.

"Sec. 3. The department is hereby vested with power and authority, and it is hereby made its duty to supervise and regulate every contract hauler; to fix, alter and amend just, fair, reasonable and sufficient rates, rules and regulations of each such contract hauler; to regulate the accounts, service and safety of operations of each such contract hauler; to require the filing of annual and other reports and of other data by such contract haulers; and to supervise and regulate contract haulers in all matters as aforesaid affecting the relationship between such contract haulers and the persons to whom they furnish transportation. The department shall have power and authority, by general order or otherwise, to prescribe rules and regulations in conformity with this act, applicable to any and all such contract haulers; and within such limits shall have power and authority to make orders and to prescribe rules and regulations affecting contract haulers."

The foregoing section is, in substance, the same as the corresponding portion of the act of 1921 (Rem. Rev. Stat. Wash. § 6389), with the exception that in the earlier law the department (then commission) was vested with power not only concerning the "rates," but was given authority for the regulation of "fares," "charges," and "classifications." The earlier statute, instead of reading, "persons to whom they furnish transportation," reads, "traveling and shipping public."

Further provisions of chapter 166 (sections 4, 6, 7, 10, 11, 13 [Rem. Rev. Stat. Wash. §§ 6381—4, 6381—6, 6381—7, 6381—10, 6381—11, 6381—13]) applying to "contract haulers" are as follows:

"Sec. 4. No contract hauler shall hereafter operate without first having obtained from the department a permit so to do, issued under the provisions of this act. Application for such permit shall be made to the department in writing and shall state the ownership, *financial condition*, equipment to be used and physical property of the applicant, *the fixed termini between which or regular route over which applicant proposes to operate,* the nature of the transportation to be engaged in and such other information as the department may require, *and such application shall have attached thereto the original or duly verified copies of all contracts to furnish transportation as hereinbefore described.* The department shall have power, *after hearing when the applicant requests a permit to operate in a territory already served by a certificated operator, who shall be given notice thereof; and* in all *other* cases with or without hearing, to issue said permit as prayed for, or for good cause shown to refuse to issue same, or to issue it for the partial exercise only of said privilege sought, and may attach to the exercise of the rights granted by said permit such terms and conditions as, in its judgment, will promote safety upon the highways and conservation of their use in the public interest. The department shall deny any application for a permit when the type of vehicle to be used is an unsafe vehicle to be operated upon the public highways, and when it is not shown that the applicant has complied with the provisions of this act and with the existing motor vehicle laws of the state of Washington.

"Sec. 6. Upon the filing of an application for a permit and compliance with all lawful requirements, the department is hereby vested with power and authority to grant a permit to the applicant. * * *

"The department shall have power to supervise and regulate the *rates,* facilities, service and safety of operations of every such contract hauler for the purpose of promoting safety upon the highways and the conservation of their use, and to regulate and supervise the accounts and method of operation of the same; to prescribe such rules and regulations as it may deem necessary in carrying out the provisions of this act; *and to supervise and regulate all contract haulers in all matters affecting the relationship between such contract haulers and the persons to whom they furnish transportation.*

"Sec. 7. * * * All applications for such permits shall be accompanied by an application fee of twenty-five dollars ($25.00).

"Sec. 10. To the end that the department may enforce the provisions of this act, each contract hauler shall maintain on file with the department the original or duly verified copies of each contract for the furnishing of transportation as hereinbefore described, and of such other matters as the department may require. No contract hauler shall charge, demand, collect or receive a greater or less or different compensation for the transportation

of property or for any service in connection therewith, than the compensation stated in the contract or contracts filed by it with the department as herein required; nor shall any such contract hauler refund or remit in any manner or by any device any portion of the compensation as provided by said contract or contracts on file with the department or ordered by the department.

"Sec. 11. No contract hauler, its officers or agents, shall require or permit any driver or operator of any motor vehicle used in the transportation of property to be or remain on duty for a longer period than ten consecutive hours, and whenever any such driver or operator shall have been continuously on duty for ten hours he shall be relieved and not required or permitted again to go on duty until he has had at least eight consecutive hours off duty; and no such driver or operator who has been on duty ten hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: Provided, That the provisions of this section shall not apply to any case of casualty or unavoidable accident or the act of God, nor to the crews of wrecking or relief motor vehicles." (Italics now supplied in all quotations from the statutes.)

The section of the act in so far as it defines a "for hire carrier" is as follows:

"Sec. 13. The term 'for hire carrier' means every person, owning, controlling, operating or managing any motor vehicle used in the business of transporting property for compensation over any public highway, except such persons as are included in the terms 'certificated operator' and 'contract hauler' as hereinbefore defined. * * *"

The law provides that a "for hire carrier" obtain a permit, the requirements concerning which are the same as those in the case of a "contract hauler," as set forth in section 4 (Rem. Rev. Stat. Wash. § 6381—4) above quoted, with the exception of the words therein italicized, which are omitted in the case of the "for hire carrier."

The provision as to the authority of the department concerning the granting of a permit to a "for hire carrier" is the same as in the case of the "contract hauler" set forth in section 6 above quoted (Rem. Rev. Stat. Wash. § 6381—6), with the exception of the therein italicized words.

Section 17 of the act (Rem. Rev. Stat. Wash. § 6381—17), applying to "for hire carriers," in part, is as follows:

"Sec. 17. * * * All applications for such permits shall be accompanied by an application fee of ten dollars ($10.00)."

The term "contract hauler" does not include persons operating exclusively within the incorporated limits of any city or town.

The material provisions of the act (sections 21, 23, 24 [Rem. Rev. Stat. Wash. §§ 6381—21, 6381—23, 6381—24]) relating to "private carriers" are as follows:

"Sec. 21. The term 'private carrier' means any person engaged in the transportation in his *own* motor vehicle, of property *sold or to be sold by him* in the furtherance of any *private commercial enterprise* or for the purpose of lease, rent or bailment.

"Sec. 23. * * * The department shall have power and authority, by general order or otherwise, to prescribe reasonable and necessary rules and regulations conformable to this act governing all private motor carriers of property.

"Sec. 24. It shall be unlawful for any private motor carrier of property to operate within this state without first having obtained from the department a permit therefor. An application shall be made to the department in writing, stating the ownership, equipment to be used by the applicant, and such other information as the department may request. Upon receipt of such information, and on compliance with the regulations, the department shall issue a permit to such applicant."

A section of this law (section 28 [Rem. Rev. Stat. Wash. § 6381—28]) applicable to both the "contract hauler" and the "for hire carrier" is as follows:

"Sec. 28. Every 'contract hauler' and 'for hire carrier' operating under the provisions of this act shall between the first and fifteenth days of January, April, July and October of each year, file with the director of public works a statement showing the gross operating revenue of such hauler or carrier for the preceding three months, or portion thereof, and shall pay to the said director a fee of one per cent of the amount of such gross operating revenue.

"All moneys collected under this act, except those collected under section 27 [section 6326], are for the purpose of carrying out the provisions of this act, and shall be paid into the state treasury and credited to the public service revolving fund."

No showing or claim has been made that the moneys to be collected under the provisions of the act would exceed those needed

for the purpose stated in section 28 of the act.

The following (sections 30, 31, 34, 36 [Rem. Rev. Stat. Wash. §§ 6381—30, 6381—31, 6381—34, 6381—36]) are general provisions of this act:

"Sec. 30. The department is hereby empowered to administer and enforce all provisions of this act and to inspect the vehicles, books and documents of all carriers to which this act applies. * * *

"Sec. 31. The department shall promulgate and mail to each holder of a permit hereunder, such regulations as it may deem necessary to properly carry out the provisions and purposes of this act.

"Sec. 34. Every person who violates or who procures, aids or abets in the violating of any provisions of this act, or who fails to obey any order, decision or regulation of the department, or who procures or aids or abets any person in his failure to obey such order, decision or regulation, shall be deemed guilty of a gross misdemeanor, and upon conviction shall be punished by a fine of not exceeding five hundred dollars ($500.00), or imprisonment. * * * Each day's violation of this act or any order, decision, rule or regulation of the department shall constitute a separate offense.

"Sec. 36. If any section, subsection, clause, sentence or phrase of this act is for any reason held to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this act."

Complainants are neither "certified operators" within the provisions of the 1921 act, as amended, nor "private carriers," as defined by the 1933 act. Their rights are to be determined either as those of "contract haulers" or "for hire carriers," as defined in the latter act.

Upon the return of the orders directing the defendants to show cause why interlocutory injunctions should not issue, these cases were submitted for final determination upon the rules and regulations made by the Department of Public Works, admitted in evidence, and the following stipulations:

"It is stipulated that these cases may be finally submitted to the court upon the Acts, rules and regulations introduced and the orally stipulated facts, and it is further stipulated that plaintiffs in one case, Cogdal and Anderson, have made no application for a permit, and that the plaintiff in Deppman case has made an application for a contract hauler permit and been denied; that the for-hire permits applied for by the Eagle Transfer and Delivery Company and the McNulty Transfer Company have been granted with restrictions, and that the application for a contract hauler permit made by the Eagle Transfer and Delivery Company has been denied."

The above reference to the McNulty Transfer Company relates to a suit which it has been stipulated should be governed by the cases now considered.

While the foregoing stipulation does not expressly mention one of the cases at present for determination, that is, No. 507, Manlowe v. G. W. Hamilton, as Attorney General of the State of Washington, et al., it is found that the intent was that it should likewise apply to that case. The bill in No. 507 alleges that complainant was what is herein called a "contract hauler," not only engaged in hauling freight interstate, but intrastate, and that he had made application for a permit as a "contract hauler," which, upon hearing, was denied, being protested by certain certified operators and by five of the principal railroad companies doing business in the state.

Upon the hearing it was further stipulated as follows:

"Mr. Vanderveer: We wish to offer some proof—a very small amount—to show to what extent the highways of the State are being used for the transportation of agricultural produce, to show that that constitutes a very considerable part of the traffic.

"Circuit Judge Wilbur: On this question of the use of the highway, if you will state to the Court what you intend to show perhaps counsel will admit—

"Mr. Vanderveer: We wish to show that a very large part of the traffic, particularly between the fruit growing sections of the state and the larger cities where those products are marketed consist in the hauling of such produce, particularly between Wenatchee and Seattle and Spokane and Yakima and Seattle and Spokane and Portland routes. And I will state to Your Honor that the purpose of offering this evidence is to distinguish this case on the facts from the Stevenson vs Binford case where the court regarded such traffic as incidental and unimportant. * * *

"Mr. Lindberg: I suppose what counsel wants to show is that there is a substantial portion of traffic engaged in that work.

"Mr. Vanderveer: A very substantial portion.

"Mr. Lindberg: We will admit that. * * *

"Mr. Vanderveer: I was asked rather precipitously to enter this case and have it not as well prepared as I would like to. What we desire to prove, and I wonder if counsel for the defendant will admit that a very substantial part of the truckage on the west side of the mountains consists in the trucking of dairy produce, milk, butter and eggs, etc. on this side of the mountains.

"Mr. Lindberg: That places upon us quite a load. 'A very substantial part.' We would hardly admit. A substantial part, I believe. I can't indicate percentages in this matter.

"Mr. Vanderveer: A substantial part. I am also unable to indicate percentages in more definite terms than that.

"Mr. Lindberg: A substantial part, we will admit.

"Mr. Vanderveer: Would you also admit that some of the heaviest truckage on any of the highways consists of oil tanks with oil trailers, and logging trucks with logging trailers carrying logs, done by private carriers, some of the heaviest truckage, with the heaviest loads.

"Mr. Lindberg: We will admit there is such traffic, and that they carry heavy loads.

"Mr. Vanderveer: The heaviest loads carried over the highways; among the heaviest loads, are carried in tank cars and tank trailers, and logs on logging trucks and logging trailers, all of which is done by private carriers.

"Mr. Lindberg: We can't admit it is all done by private haulers. A portion is done by private haulers. That it is some of the heaviest truckage, we will admit, and that a portion is done by private haulers, a portion by for hire haulers and a portion by contract haulers. * * * We will admit that a portion is done by private haulers.

"Mr. Vanderveer: That will suffice for our purpose."

Defendants' contention that complainants have a plain, speedy, and adequate remedy at law, and that these cases are to be distinguished from Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975, and are to be controlled by the ruling in Porter v. Investors' Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. Ed. 1226, cannot be sustained because of the difference in the Washington and Montana statutes therein considered.

In the case of the "contract hauler," Manlowe, case No. 507, alleged to be engaged in interstate as well as intrastate commerce, complaint is made of the act being contrary to the provisions of the Fourteenth Amendment, article 1, § 10, cl. 1, the contract clause, and the Fourth Amendment. In any view the Fourth Amendment restrains Congress rather than the Legislature of a state. No express complaint is made that this act violates the partly corresponding provision (article 1, § 7) of the State Constitution. In these cases there is no specific complaint of this act in any way burdening interstate commerce. In each of the cases complainants' attack is directed against these acts of the Legislature rather than against any regulation made by the department under their authority.

The contention of complainants that chapter 166 is contrary to the contract clause of the Constitution is untenable. Sproles v. Binford, 286 U. S. 374, 390, and 391, 52 S. Ct. 581, 76 L. Ed. 1167; Stephenson v. Binford, 287 U. S. 251, 276, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721.

Whether permits or licenses expiring January 1, 1934, are so far in the nature of contracts as to defer the effective date of the 1933 act in any particular, it is not necessary to determine, as it is apparent that no decree can be rendered in these cases prior to that date.

Invoking the Fourteenth Amendment, it is complained that chapter 166 imposes upon complainants the duties of a common carrier, thereby depriving them of property and liberty without due process of law. No provisions of this act work any such result. While a number of its provisions regulating the "contract hauler" of section 1 (f) et seq., and the "for hire carrier" of section 13 et seq. are of the nature of those frequently imposed upon common carriers, yet nowhere in this act is either a "contract hauler" or a "for hire carrier" required to devote his property to the service of the public as did the California act considered in the case of Frost & Frost Trucking Co. v. Railroad Commission of California, 271 U. S. 583, 591–593, 46 S. Ct. 605, 70 L. Ed. 1101. That such is true was pointed out by the Supreme Court in Continental Baking Co. v. Woodring, 286 U. S. 352, 364, 52 S. Ct. 595, 76 L. Ed. 1155, and Stephenson v. Binford, 287 U. S. 251–275, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721.

While the "for hire carrier" of chapter 166 may in fact be a common carrier, he is such by reason of the nature of his business voluntarily undertaken rather than by any requirement of this act.

It is contended that chapter 166 is in conflict with the Federal Highway Act, § 9 (23 USCA § 9) providing that all highways constructed or reconstructed under the provisions of such act shall be free from tolls of all kinds, and that, in consequence, the Washington act violates article 6, cl. 2, of the Constitution.

The sections of the act in question (Wash. Laws 1933, c. 166) are sections 27 and 28 (Rem. Rev. Stat. Wash. §§ 6326, 6381—28). The last-numbered section has been already set out. Section 27 (section 6326) is as follows:

"Sec. 27. That section 15 of chapter 96 of the Laws of 1921, as amended by section 1 of chapter 140 of the Laws of 1931, be amended to read as follows:

"Section 15. Except as otherwise specifically provided by law for the registration of each motor vehicle, there shall be paid and collected annually three dollars ($3.00); and in addition thereto, for each for-hire car, auto stage or auto stage trailer, four dollars and fifty cents ($4.50) per seat for the seating capacity thereof; and for each truck or trailer the following fees, based upon the maximum rated carrying capacity thereof: 5,000 lbs. or less, 75¢ per hundred weight or fraction thereof; over 5,000 lbs. and not to exceed 10,000 lbs., 85¢ per hundred weight or fraction thereof; over 10,000 lbs. and not to exceed 15,000 lbs., 95¢ per hundred weight or fraction thereof; over 15,000 lbs. and not to exceed 20,000 lbs., $1.05 per hundred weight or fraction thereof; over 20,000 lbs. the last mentioned rate shall be increased 10¢ per hundred weight or fraction thereof for each ton the maximum rated carrying capacity exceeds 20,000 lbs.: Provided, No such fee shall exceed six hundred dollars ($600.00); and in case any such vehicle shall be propelled by steam or electricity, gas or other fuel upon which an excise tax on liquid fuel has not been provided by this act, an additional fee of seventy-five cents (75¢) per hundred weight or fraction thereof of such vehicle's gross weight shall be paid and collected in lieu of such excise tax: Provided, That the fee for any truck or trailer used only for the purpose of transporting any well-drilling machine, air compressor, rock crusher, conveyor, hoist, donkey engine, cook house, tool house, bunk house or similar machine or structure attached to and made a part thereof, shall be three dollars ($3.00): Provided, further, That no additional fee shall be required to be paid upon trucks or trailers of a maximum rated carrying capacity of one-half (½) ton or less when the same is used by the owner solely for carrying his own produce or property.

"Annual fees for dealer's licenses, and dealer's license plates and fees for additional plates, shall be paid and collected as follows: Dealers in motorcycles and motor vehicles five dollars ($5.00) including one set of dealer's license plates, and additional sets of license plates bearing the same number, two dollars ($2.00) per set of two plates.

"It shall be unlawful for the owner or operator of any motor vehicle, truck or trailer not licensed annually for hire to carry passengers therein for hire.

"The increased fees prescribed in this section shall become effective January 1, 1934."

While section 27 does not disclose the purpose for which the registration fees are to be used, section 4 of chapter 41, Laws of 1933, page 209 (Rem. Rev. Stat. Wash. 1933 annual pocket part, § 6330), provides that all such fees shall be paid into the state treasury and placed to the credit of the state motor vehicle fund. Such fees are not tolls within the meaning of section 9 of the Federal Highway Act. Carley & Hamilton v. Snook, 281 U. S. 66, 50 S. Ct. 204, 74 L. Ed. 704.

Nothing, other than the language of the acts, has been shown as to the use of the one per cent. tax on gross revenue for which provision is made in section 28. See, also, section 10418, Rem. Rev. Stat. Wash. Such a fee or tax is not a road toll as ordinarily understood. Johnson Transfer & Freight Lines et al. v. Perry (D. C.) 47 F.(2d) 900, 901, 904. It has not been made to appear but that as to such a fee and fund the complainants would not, if paid, have an adequate remedy at law.

It has been contended that the requirement, by sections 5 and 15 of chapter 166 (Rem. Rev. Stat. Wash. §§ 6381—5, 6381—15), of liability and property damage insurance in the case of the "contract hauler" and "for hire carrier," is contrary to the Fourteenth Amendment.

Rule 28 of the Department of Public Works, concerning such insurance, provides:

"Rule 28. All insurance policies or surety bonds filed with the Department as required by chapter 166, Laws of 1933, and by these rules, shall provide that the same shall continue in full force and effect unless and until canceled by thirty (30) days' written notice served on the Department of Public Works by the insurance company, the said thirty

(30) days' notice to commence to run from the date notice is actually received by the Department.

"All policies or bonds filed shall become a part of the permanent records of the Department.

"All insurance policies filed covering liability and property damage shall carry the following form of endorsement:

"Endorsement.

"The policy to which this endorsement is attached is written in pursuance of, and is to be construed in accordance with chapter 166, Laws of 1933, State of Washington, and acts amendatory thereof, and supplemental thereto, and the rules and regulations of the Department of Public Works of Washington adopted thereunder. The policy is to be filed with the state in accordance with said statute.

"In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby waives a description of the vehicles to be insured hereunder and agrees to pay any final judgment for personal injury, including death resulting therefrom, and/or damage to property, *excluding cargo,* of any person other than the assured, caused by any and all motor vehicles (as defined by section 1 (c) of chapter 166, Laws of 1933, State of Wash.) operated by the assured pursuant to a permit issued by the Department of Public Works of Washington in accordance with chapter 166, Laws of 1933, within the limits set forth in the schedule shown hereon, and further agrees that upon its failure to pay any such final judgment, such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof by the assured shall relieve the company from liability hereunder or from the payment of any such judgment.

"Schedule.

"(Unless the policy is written for excess limits.)

"On each motor vehicle used for the transportation of property not to exceed

"$5,000 for any recovery for personal injury by one person;

"$10,000 for all persons receiving personal injury by reason of one act of negligence; and not to exceed

"$1,000 for damage to property; *excluding cargo,* of any person other than the assured.

"The policy to which this endorsement is attached shall not expire, nor shall cancellation take effect, until after thirty (30) days' notice in writing by the company shall have first been given to the Department of Public Works of Washington, at its office in Olympia, Washington, said thirty (30) days' notice to commence to run from the date notice is actually received by the Department.

"Attached to and forming a part of Policy No. ——— issued by ——— to ———

"(Signatures and/or counter-signatures as provided by conditions of the policy.)" (Italics by the court.)

In view of the foregoing rule, neither section 5 nor section 15 deprives the contract hauler or the for hire carrier of liberty or property without due process of law. Continental Baking Co. v. Woodring, 286 U. S. 352–365, 366, 52 S. Ct. 595, 76 L. Ed. 1155; Stephenson v. Binford, 287 U. S. 251–276, 277, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721; Packard v. Banton, 264 U. S. 140–145, 44 S. Ct. 257, 68 L. Ed. 596.

Until a shipper complains on such ground, the court will not undertake to determine as to his freedom to contract as he sees fit in this particular, under the Fourteenth Amendment. Hall v. Geiger-Jones Co., 242 U. S. 539–554, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643.

By the foregoing it is not to be understood that the court concludes the statute would be unconstitutional if it required insurance for the protection of the goods of the shipper intrastate. Cobb v. Department of Public Works (D. C.) 60 F.(2d) 631, appeal dismissed by the Supreme Court Oct. 9, 1933. 54 S. Ct. 50, 78 L. Ed. ——. One whose property is injured while being carried over a highway may see fit to sue for injury to such property either for negligence of the carrier or defect in the highway. For its protection against the assertion of claims of the latter nature, it is not perceived why the state has not the right to require such insurance.

It has also been contended that the act is invalid under the Fourteenth Amendment, depriving complainants of property without due process of law, because section 3 of chapter 166 (Rem. Rev. Stat. Wash. § 6381—3) undertakes to vest the department with the power, in so far as the "contract hauler" is

concerned, to "fix, alter and amend just, fair, reasonable and sufficient rates."

It has not been shown that the department has prescribed any rate or rates pursuant to this section, and upon the trial it was stated that it had not done so. In such case an injunction will not be granted. "When the tax is assessed, the ordinary remedies will be available for contesting it, if the assessment is not in accordance with the law." Continental Baking Co. v. Woodring, 286 U. S. 352-367, 52 S. Ct. 595, 600, 76 L. Ed. 1155; Stephenson v. Binford, 287 U. S. 251-260, 261, 262, 272, 273, 274, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721.

Sections 3 and 6 of the act (Rem. Rev. Stat. Wash. §§ 6381—3, 6381—6) undertake to vest the department with authority to supervise and regulate every "contract hauler"; to regulate the accounts, service and safety of operations of such hauler; to require the filing by him of annual and other reports and other data; to supervise and regulate them in all matters as aforesaid affecting the relationship between such "contract haulers" and the persons to whom they furnish transportation; to regulate the facilities of such haulers for the purpose of promoting safety upon the highways and the conservation of their use; to regulate and supervise their accounts and method of operation.

Section 16 of this chapter (Rem. Rev. Stat. Wash. § 6381—16) undertakes to vest the department with power to supervise and regulate the facilities, service, and the safety of operations of "for hire carriers" for the purpose of promoting safety upon the highways and the conservation of their use and to regulate and supervise the accounts and methods of operation of the same. No complaint has been made of any attempted exercise of authority by the department under any of the foregoing purported grants of authority. Though certain of the foregoing provisions be invalid, Smith v. Cahoon, 283 U. S. 553-562, 563, 51 S. Ct. 582, 75 L. Ed. 1264, yet the department, not having undertaken to exercise an authority claimed under these questioned provisions, save in the particular relating to permits, no injunction will be granted on their account, Continental Baking Co. v. Woodring, 286 U. S. 352-367, 368, 52 S. Ct. 595, 76 L. Ed. 1155.

The attack made in the complaints has not been confined to the due process clause of the Fourteenth Amendment, but also invokes the equal protection clause of that amendment. It has been contended that there is an unlawful discrimination against the "contract hauler" in favor of the "certified operator," in that the "contract hauler" is restricted to the operations covered by his contracts and is not allowed to engage in casual hauling as is the "for hire carrier." The complaints in this particular are inconsistent with the contention already considered that the law constrains the contract hauler to become a common carrier. The "certified operator" is a common carrier. Rem. Rev. Stat. Wash. § 6390. Because it is a common carrier, it is not only permitted, but it would be its duty, to serve the public in the matter of carriage. This difference between the two justifies any difference in the rights accorded them under the acts of 1921 and 1933.

Complaint is made that there is an unlawful discrimination against the "contract hauler," in that section 3 of chapter 166 undertakes to authorize the department to fix rates in so far as such hauler is concerned, but does not give the department such authority in the case of the "for hire carrier." As already pointed out, the department has not as yet prescribed any rates. Under the 1933 act, section 1 (f), Rem. Rev. Stat. Wash. § 6381—1 (f), the "contract hauler," and under section 1 (d) of the 1921 act (Rem. Rev. Stat. Wash. § 6387 (d), the "certified operator," operate between fixed termini or over regular routes. Not so the "for hire carrier." He is the odd job man engaged in casual hauling. There is a difficulty, as a practical matter, in fixing a rate in the case of the "for hire carrier" not encountered in the case of a "certified operator" or "contract hauler." There is a difference in the character of highway used as a result of the difference in the character of operation by the two classes of carriers; the "contract hauler" not using the by-roads or those tributary to main highways to the extent of their use by the "for hire carrier" as a class. These differences are not so inconsequential as to warrant the court in concluding that the action of the Legislature in this respect was arbitrary and that there had been any unlawful discrimination.

Sections 2, 4, and 10 of chapter 166 (Rem. Rev. Stat. Wash. §§ 6381—2, 6381—4, 6381—10), except in the case of a "certified operator" (who, as pointed out, is a common carrier), forbid one engaging in the business of transporting property by motor vehicle for compensation over a public highway between fixed termini or over regular routes unless the person, prior to engaging in such business, makes a written contract with the shipper, and that such contracts or verified copies thereof be attached to applications for a per-

mit to operate as a "contract hauler" and that each contract for such carriage or a verified copy thereof shall be, by the "contract hauler," maintained on file with the department, and no other charge than those therein shown received for such carriage, rebates from which are forbidden.

There are no such requirements as the foregoing in the case of the "for hire carrier." However, under the 1921 law, as amended, section 3 (Rem. Rev. Stat. Wash. § 6389), the department is given authority, in the case of the "certified operator," to fix, alter, and amend just, fair, reasonable, and sufficient rates, fares, charges, classifications, rules and regulations. Under such authority it has required the filing by such operator of tariffs showing all rates and charges for transportation and that the same shall be kept open for public inspection.

The differences in the three classes of carriage already pointed out warrant this particular requirement in the case of the contract hauler. The making and filing of such contracts would not only aid the department in the determination of the fees and taxes due from the "contract hauler," but would enable the department to determine whether the business actually carried on, or part of it, was in its nature that of a "certified operator" or "for hire carrier." The nature of the business of the "for hire carrier" is such that a single charge might not be sufficient to defray the reasonable expense of the preparation, execution, and filing of such a contract.

Section 4 of chapter 166 (Rem. Rev. Stat. Wash. § 6381—4) requires that the application of a "contract hauler" for a permit shall state "the ownership, financial condition, equipment to be used and physical property of the applicant, the fixed termini between which or regular route over which applicant proposes to operate, the nature of the transportation to be engaged in and such other information as the department may require." No such information is expressly required in the case of the "certified operator."

Section 14 of chapter 166 (Rem. Rev. Stat. Wash. § 6381—14) requires that the application of a "for hire carrier" shall state "the ownership, equipment to be used and physical property of the applicant, the nature of the transportation to be engaged in, and such other information as the department may require." In the case of the "certified operator," the department is given general authority to require the filing of annual and other reports and other data. While the foregoing provisions are not identical in the language used, these requirements and those implied in the case of the "certified operator," who must obtain from the department a certificate of public convenience and necessity, and the difference in the nature of their carriage already described, show that the equal protection of the law is not by the act in this particular denied the "contract hauler." Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Roadway Express v. Murray (D. C.) 60 F.(2d) 293–299.

By section 5 of the 1921 act, as amended (Rem. Rev. Stat. Wash. § 6391), and sections 5 and 15 of the 1933 act (Rem. Rev. Stat. Wash. §§ 6381—5, 6381—15), liability and property damage insurance are required of the "certified operator," "contract hauler," and "for hire carrier." No such insurance is required of the "private carrier"; that is, one engaged in the transportation, in his own motor vehicle, of property sold or to be sold by him in the furtherance of any private commercial enterprise or for the purpose of lease, rent, or bailment.

Section 1 of chapter 166 (Rem. Rev. Stat. Wash. § 6381—1) recites:

"Section 1. The business of operating as a motor carrier of property for hire along the highways of this state is declared to be a business affected with the public interest. The rapid increase of motor carrier freight traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that congestion of traffic on highways may be minimized; and that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public. Wherefore, the legislature in the interest of the public safety and for the conservation of the highways and the preservation of the use thereof for the public, provides as follows. * * *"

The requirement of insurance in the case of these carriers is not an unlawful discrimination against either the "contract hauler" or the "for hire carrier." Bradley v. Public Utilities Commission, 289 U. S. 92–97, 53 S. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131; Packard v. Banton, 264 U. S. 140–144, 44 S. Ct. 257, 68 L. Ed. 596; Stephenson v. Binford, 287 U. S. 251, 277, 53 S. Ct. 181, 77

L. Ed. 288, 87 A. L. R. 721; Continental Baking Co. v. Woodring, 286 U. S. 352, 371–373, 52 S. Ct. 595, 76 L. Ed. 1155.

By section 7 of chapter 166 (Rem. Rev. Stat. Wash. § 6381—7), an application fee of $25 is required of the "contract hauler," and, by section 17 (Rem. Rev. Stat. Wash. § 6381—17), an application fee of $10 is required of the "for hire carrier." No such fee is required of the "private carrier." By section 28 (Rem. Rev. Stat. Wash. § 6381—28), the "contract hauler" and the "for hire carrier" are required to pay a fee of 1 per cent. of the amount of their gross operating revenue shown by their quarterly reports. No such fee or tax is required of the "private carrier." The use of the highways by the "private carrier" is incidental to his business, which is not solely that of carriage or the use of the highway. It may be assumed that apart from transportation equipment he has property, including that transported, which affords a source of revenue which it cannot be assumed exists in the case of the "contract hauler" and "for hire carrier." This difference justifies the discrimination in these particulars. Bekins Van Line v. Riley, 280 U. S. 80, 50 S. Ct. 64, 74 L. Ed. 178, and Packard v. Banton, Bradley v. Public Utilities Commission, Stephenson v. Binford, and Continental Baking Co. v. Woodring, supra.

The difference in the amount of the application fee in the case of the "contract hauler" and the "for hire carrier," because of the difference already stated in the nature of their carriage, is not an unlawful discrimination.

By sections 11 and 20 of the 1933 act (Rem. Rev. Stat. Wash. §§ 6381—11, 6381—20), it is provided that no "contract hauler" or "for hire carrier" shall require or permit any driver or operator of any motor vehicle used in the transportation of property to be or remain on duty for a longer period than ten consecutive hours, and that he shall not be required or permitted to again go on duty until he has had at least eight consecutive hours off duty. While in the case of the "certified operator" there is no similar provision, the department has promulgated fully as strict a rule, No. 69. There is no similar provision in the case of the "private carrier."

It is to be assumed that complainants in these cases are fairly representative of the classes to which they belong. In so far as complainants are "contract haulers," it is shown by their complaints that they operate over main or trunk highways. The nature of the business of the "for hire carrier" is such as to tend to confine it, in large part, to the vicinity of cities and towns. The business of "private carriers," as defined by the act, the Legislature may have assumed, is neither restricted to main or trunk highways nor to the vicinity of cities or towns to a degree equal to that in the case of the "for hire carrier." The "private carrier" has, in the transportation of his own property, a restraining influence calculated to induce care in operation different in character, and it may be in degree, from that in the case of the "contract hauler" or the "for hire carrier."

The fact that the use by the private carrier of the highway is incidental to the disposition of his carried property, it may not be unreasonable to conclude, tends to restrict the employment of the operator of his motor vehicle in its highway operation to a less extent than in the case of the other carriers.

The carriage of the private carrier is, to a greater extent, a one-way carriage, it may be assumed, than that of the "contract hauler" or "for hire carrier," and it may be further assumed there is in the case of a loaded motor vehicle, other things being the same, a greater degree of care required in its operation than an empty one because of the greater momentum. These, with other differences already pointed out, authorize any discrimination in the act in this particular. Bradley v. Public Utilities Commission, 289 U. S. 92–97, 53 S. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131; Continental Baking Co. v. Woodring, 286 U. S. 352, 373, 52 S. Ct. 595, 76 L. Ed. 1155.

The facts stipulated in the present suits regarding the "private carrier" use of oil tanks and trailers, logging trucks and trailers, are not sufficient to distinguish these suits from the decisions already cited.

Section 1 (f) of chapter 166 (Rem. Rev. Stat. Wash. § 6381—1 (f), defining a "contract hauler," provides:

"f. The term 'contract hauler' means every person owning, controlling, operating or managing any motor vehicle used in the business of transporting property for compensation, other than as a certified operator, over any public highway between fixed termini or over a regular route, not operating exclusively within the incorporated limits of any city or town: Provided, That the term 'contract hauler' shall not include any person owning, controlling, operating, or managing any motor vehicle operated exclusively in transporting agricultural, horticultural, or dairy or

other farm products from the point of production to the market."

The above provision excluding a hauler within the incorporated limits of any city or town is not an unlawful discrimination. Continental Baking Co. v. Woodring, 286 U. S. 352–366, 369, 52 S. Ct. 595, 76 L. Ed. 1155.

It has been contended that the above proviso "that the term 'contract hauler' shall not include any person owning, controlling, operating, or managing any motor vehicle operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market" is an unlawful discrimination. In State ex rel. Scott v. Superior Court (Wash.) 24 P.(2d) 87, it was held that the effect of this provision was not to entirely exempt such carriers as those covered by the proviso, but that it did bring them within the classification of "for hire carriers." "The decision of the state court is controlling as to the meaning and extent of the statutory requirements. St. Louis Southwestern Ry. Co. v. Arkansas, 235 U. S. 350, 362, 35 S. Ct. 99, 59 L. Ed. 265; Supreme Lodge Knights of Pythias v. Meyer, 265 U. S. 30, 32, 33, 44 S. Ct. 432, 68 L. Ed. 885; American Railway Express Co. v. Royster Guano Co., 273 U. S. 274, 280, 47 S. Ct. 355, 71 L. Ed. 642." Hicklin, etc., v. Coney et al., 54 S. Ct. 142, 144, 78 L. Ed. —, decided by the Supreme Court of the United States on Dec. 4, 1933.

It was stated by the court in Continental Baking Co. v. Woodring, 286 U. S. 352, at page 372, 52 S. Ct. 595, 602, 76 L. Ed. 1155:

"In sustaining the exemption, the District Court referred to the factual basis for the distinction. 'The Legislature knew,' said the court 'that as a matter of fact farm products are transported to town by the farmer, or by a nonexempt "contract carrier" employed by him. The Legislature knew that as a matter of fact the use of the highways for the transportation of farm products by the owner is casual and infrequent and incidental; farmers use the highways to transport their products to market ordinarily but a few times a year. The Legislature rightly concluded that the use of the highways for carrying home his groceries in his own automobile is adequately compensated by the general tax imposed on all motor vehicles.' 55 F.(2d) at page 352. And the court properly excluded from consideration mere hypothetical and fanciful illustrations of possible discriminations which had no basis in the actual experience to which the statute was addressed. The court found a practical difference between the case of the appellants 'who operate fleets of trucks in the conduct of their business and who use the highways daily in the delivery of their products to their customers,' and that of 'a farmer who hauls his wheat or live stock to town once or twice a year.' The Legislature in making its classification was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations, which by reason of their habitual and constant use of the highways brought about the conditions making regulation imperative and created the necessity for the imposition of a tax for maintenance and reconstruction. As the Court said in Alward v. Johnson, 282 U. S. 509, 513, 514, 51 S. Ct. 273, 274, 75 L. Ed. 496, 75 A. L. R. 9: 'The distinction between property employed in conducting a business which requires constant and unusual use of the highways and property not so employed is plain enough.' See, also, Bekins Van Line v. Riley, 280 U. S. 80, 82, 50 S. Ct. 64, 74 L. Ed. 178; Carley & Hamilton v. Snook, 281 U. S. 66, 73, 50 S. Ct. 204, 74 L. Ed. 704, 68 A. L. R. 194."

Complainants contend that the determination of the present cases in this particular is not controlled by the foregoing decision because of what is claimed to be a difference as to the facts in the present suits shown by the stipulations made upon the trial which have already been stated. It is within the knowledge of the court that the Yakima Valley, the vicinity of Wenatchee and of Walla Walla are important agricultural and fruit growing sections of the state, and that through them run main or trunk line highways. It is also a matter of common knowledge, of which the court will take judicial notice, that there are many sections of the state where very considerable amounts of agricultural, horticultural, and dairy and other farm products are produced and from which they are transported from the point of production to market over highways of the state tributary to main or trunk line highways.

While it has been stipulated in the present suits that a very substantial portion of the traffic on the highways consists in the trucking of such produce as that covered by the proviso, the court concludes that the stipulated facts are not sufficient to take these cases out of the scope of the ruling in Continental Baking Co. v. Woodring, supra.

It has also been contended that the effect of the proviso is to deny to the owner carrier the right to transport such products as those described therein. If the proviso is ca-

pable of such construction, it is a matter concerning which the court will await complaint from the owner carrier rather than any of the parties now complaining.

Somewhat similar statutes to those herein considered have recently been before the Supreme Court of the United States and of the state of Oregon, which statutes have, by those courts, been held valid. Hicklin, etc., v. Coney et al., 54 S. Ct. 142, 78 L. Ed. —, Supreme Court of the United States, decided December 4, 1933; Anderson v. Thomas, decided by the Supreme Court of Oregon, 26 P.(2d) 60, October 17, 1933.

The complaints in the above-entitled causes will be dismissed, the temporary restraining orders dissolved, and the interlocutory injunctions and complainants' motions to strike affidavits denied.

The findings of fact, conclusions of law, decree, and indicated orders will be tentatively settled, upon notice, before the resident judge for submission to the other judges of the court, or, in the absence of the resident judge, by one of the other members of the court for such purpose.

The clerk is directed to notify the attorneys for the parties and those appearing herein of the filing of this decision. He is likewise directed to notify the attorneys for the parties in the following cases of the filing of this decision: Glen K. Cogdal et al. v. Murray et al., No. 508; McNulty Transfer, Inc., v. Hamilton et al., No. 509; V. D. Hamilton, etc., v. Hamilton et al., No. 510; S. R. Stalcup et al. v. Murray et al., No. 516.