NEWPORT ELECTRIC CORPORATION *vs.* WILLIAM M.
OAKLEY.

JUNE 24, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, and Sweeney, JJ.

(1)  *Interstate Commerce.  Motor Busses.  Regulation.*

Respondent, a citizen of Massachusetts, was a common carrier of passengers
   by means of motor bus, engaged in interstate commerce.  His bus was
   registered and his drivers were licensed as provided by cap. 98, G. L. 1923.
   He had not applied for a certificate to operate motor vehicles under cap.
   254, G. L. 1923, which provides that no such certificate shall be issued to
   any person who is not a citizen resident within this State.

*Held*, that a state cannot regulate competition in interstate commerce.

*Held*, further that to withhold from a person about to engage in interstate
   commerce a certificate on the ground that he is not a citizen resident within
   this State is in violation of the Commerce Clause of the Federal Constitu-
   tion.    ·          .

*Held*, further, that as the subject was exclusively within the national domain
   it was unimportant that Congress had failed to act;  such non action in-
   dicating its will that such commerce should be free and untrammeled.

(2)  *Interstate Commerce.  Regulation.  Motor Busses.*

Regulations for public safety and order and for the conservation of the high-
   ways are local in their nature, and are equally necessary whether the public
   service motor vehicles are engaged in interstate or intrastate business, and
   cap. 254, G. L. 1923, "Of public service Motor Vehicles Operating Over
   Fixed Routes," was intended to apply whether the motor vehicles are
   engaged in interstate or intrastate commerce.

(3)  *Interstate Commerce.  Motor Busses.  · Police Powers.*

Uniform regulations reasonably necessary for public safety and order and
   the conservation of the highways are within the police power of the State
   and may be enforced, at least in the absence of national legislation covering
   the subject against those engaged in interstate as well as intrastate commerce.

(4)  *Interstate Commerce.  Motor Busses.  Police Powers.  Regulation.*

The provisions in sec. 3, cap. 254, G. L. 1923, "Of Public Service Motor
   Vehicles Operating Over Fixed Routes," authorizing the Public Utilities
   Commission to specify the route over which the motor vehicles engaged in
   interstate commerce may operate;  the number of passengers it may carry
   at any one time;  and the service to be rendered, if reasonably exercised for
   public safety and order and the conservation of the highways without
   placing unnecessary restraint upon interstate commerce are not prohibited
   by the Commerce Clause of the Federal Constitution.

(5)  *Interstate Commerce.  Motor Busses.  Police Powers.  Regulation.*

It was not error to restrain respondent a citizen of Massachusetts engaged in
   interstate commerce by means of motor bus from operating upon the

highways of this State, until he had complied with the valid provisions of G. L. 1923, cap. 254. The question whether all of the regulatory provisions of said chapter to be complied with by operators after obtaining a certificate from the Public Utilities Commission, are valid when applied to those engaged in interstate commerce is not passed upon.

BILL IN EQUITY. Heard on appeal of respondent. Decree appealed from, modified.

RATHBUN, J. This is a bill in equity. The complainant operates a street railway from Newport, Rhode Island, to the City Hall in Fall River, Mass., and has been granted by the Public Utilities Commission of this State, in accordance with the provisions of Chapter 254, G. L. 1923, a certificate of public convenience and necessity to operate public service motor vehicles from Washington square in said Newport over substantially the same route to the boundary line between this State and the Commonwealth of Massachusetts. The respondent, a citizen and resident of Massachusetts, without receiving or applying for any certificate from said commission, commenced operating as a common carrier of passengers a motor bus over the route used by the complainant from said Washington square to a point within the city of Fall River, Massachusetts. The bus did not stop to receive or discharge passengers at other than the terminal points. The complainant, to prevent competition, brought this action to enjoin the respondent from operating said bus as aforesaid over the highways of this State until the respondent shall obtain from said Commission the certificate provided for in said Chapter 254 and comply with the reasonable rules and regulations of said Commission. The case was heard by a justice of the Superior Court on an agreed statement of facts and said justice entered a decree temporarily enjoining the respondent until he shall comply with all of the provisions of said Chapter 254 and the case is before us on the respondent's appeal from said decree.

It is conceded that the respondent, at the time he was enjoined, was a common carrier of passengers engaged in interstate commerce. His bus was registered as a motor

vehicle and his drivers were licensed as provided by Chapter 98, G. L. 1923. The respondent contends (1) that the provisions of said Chapter 254, entitled: "Of Public Service Motor Vehicles Operating Over Fixed Routes", were not intended to apply to motor busses engaged in interstate commerce; (2) that if any part of said chapter does so apply each and all of such provisions thereof are unconstitutional and void as being in violation of the Commerce Clause of the Federal Constitution giving to Congress the exclusive power to regulate commerce among the several states. (Article 1, Section 8).

Section 1 of said chapter provides that the term "jitney" as used in the act shall be deemed to include any public service motor vehicle transporting passengers over streets or highways. Section 2 of said chapter declares "every person owning or operating a jitney to be a common carrier subject to the jurisdiction of the Public Utilities Commission," and while so operating "to such reasonable rules and regulations as said commission may prescribe with respect to routes, fares, speed, schedules, continuity of service, and the convenience and safety of passengers and the public." Section 3 of said chapter provides that: "No person, association or corporation shall operate a jitney until the owner thereof shall have obtained a certificate from the public utilities commission specifying the route over which such jitney may operate, the number of passengers which it may carry at any one time, and the service to be furnished and that public convenience and necessity require its operation over such route. Such certificate shall be issued only after written application for the same has been made by the owner of such jitney. No such certificate shall be issued to any person who is not a citizen resident within this state". The certificate cannot be withheld from a person about to engage in interstate commerce on the ground that the public is being adequately served over the proposed route or that public convenience and necessity do not require the contemplated service. A state cannot regulate com-

petition in interstate commerce.    Since this cause was commenced the Federal Supreme Court, in an opinion rendered March 2, 1925, *Buck* v. *Kuykendall*, 45 S. C. 324, held that a statute which "prohibits common carriers for hire from using the highways by auto vehicles between fixed termini or over regular routes, without having first obtained from the director of public works a certificate declaring that public convenience and necessity require such operation" violates the Commerce Clause when applied to persons engaged in interstate commerce and we agree with the respondent in his contention that to withhold from a person about to engage in interstate commerce a certificate on the ground that he is not "a citizen resident within this state" is forbidden by the Commerce Clause.    A state statute, affecting interstate commerce, which discriminates in favor of the citizens of other states is void as an interference with and placing a burden upon interstate commerce amounting to regulation.    It is unimportant that Congress has failed to act.    As the subject admits of and requires uniform regulation it is exclusively within the national domain and nonaction by Congress indicates its will that such commerce shall be free and untrammeled.    See *Minn. Rate Cases*, 230 U. S. 352 at 401 and cases there cited.    *Walling* v. *Michigan*, 116 U. S. 446; *Bowman* v. *Chicago &c. R. R. Co.*, 125 U. S. 465.    But regulations for public safety and order and for the conservation of the highways are local in their nature and are equally necessary whether the public service motor vehicles are engaged in interstate or intrastate business and (2) there is nothing in the act to indicate that such regulations were not intended to apply to persons and motor vehicles engaged in interstate commerce.    Section 12 of said chapter is as follows:    "Each section of this chapter and every part of each section are hereby declared to be independent sections; and the holding of any section or sections, or part or parts thereof, to be void, ineffective or unconstitutional for any cause, shall not be deemed to affect any other section or part thereof."    The provisions of said section confirm our

opinion that the legislature intended said chapter to apply to all public service transportation by motor vehicles over the highways of this State whether engaged in interstate or intrastate commerce.

We have already found that two provisions of said Section 3, when applied to persons and vehicles engaged in interstate commerce, amount to regulations of interstate commerce and are for that reason void. Are all of the provisions of said Section 3 equally obnoxious? We think not. (3) Uniform regulations reasonably necessary for public safety and order and the conservation of the highways are within the police powers of the State and may be enforced, at least in the absence of national legislation covering the subject, against those engaged in interstate as well as intrastate commerce. In *Buck* v. *Kuykendall, supra,* the court said: "It may be assumed . . . that appropriate state regulations adopted primarily to promote safety upon the highways and conservation in their use are not obnoxious to the Commerce Clause, where the indirect burden imposed upon interstate commerce is not unreasonable", and in *Mich. Public Utilities Commission et al.* v. *Duke,* 266 U. S. 570, the court used the following language: "This court has held that, in the absence of national legislation covering the subject, a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others". The provisions in said Section 3 authorizing the Public Utilities Commission (4) to specify the route over which the motor vehicles engaged in interstate commerce may operate, the number of passengers it may carry at any one time and the service to be rendered, if reasonably exercised for public safety and order and the conservation of the highways without placing unnecessary restraint upon interstate commerce, are regulations not prohibited by the Commerce Clause.

Although the decree appealed from is too broad in its provisions it was not error to restrain the respondent from

operating his motor bus upon the highways of the State until he complies with the valid provisions of said Chapter 254. In *Buck* v. *Kuykendall, supra,* the complainant, having "complied with the laws of Washington relating to motor vehicles, their owners and drivers, . . . and alleging a willingness to comply with all applicable regulations concerning common carriers . . . applied for the prescribed certificate of public convenience and necessity" and the certificate was refused on the ground that the territory was being adequately served. In the case before us the respondent made no application for a certificate of any nature and made no offer or attempt to comply with any of the provisions of said Chapter 254. Said chapter contains numerous regulatory provisions to be complied with by jitney operators after obtaining a certificate from said Commission. The question whether all of such provisions, when applied to jitneys engaged in interstate commerce, are valid was not briefed by counsel and has not been passed upon. However, having found that said chapter was intended to apply to public service motor vehicles engaged in interstate commerce and that some of the provisions thereof, when so applied, are valid, the preliminary injunction must be continued. The motion, filed in this court since the hearing before us, to suspend the operation of the decree appealed from is denied.

The decree appealed from is so modified that the respondent is enjoined until he shall comply with the provisions of said Section 3, excepting those which we have held to be void when applied to vehicles and persons engaged in interstate commerce.

The parties may submit a form of decree to be entered in the Superior Court. When such form has been approved by us the cause is remanded to the Superior Court for further proceedings.

*Sheffield & Harvey,* for complainant.

*William Williams, William C. Crossley,* for respondent.