Roy C. Farnum *vs.* Public Utilities Commission.

JANUARY 29, 1932.

Present: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

Stearns, C. J. This is an application to the Public Utilities Commission by Roy C. Farnum for a certificate to operate motor vehicles as a common carrier between Newport, Rhode Island, and Boston, Massachusetts. In his application petitioner described the desired route and terminal in Newport as follows: "Beginning at the terminal, 21 Long Wharf, thence along Long Wharf to Washington Square, thence to and along Broadway . . . same being part of an interstate route between Newport, R. I., and Boston, Mass."

The cause is here on the appeal of the petitioner from the order of the commission denying and dismissing his ap-

plication for a certificate to operate jitneys from the terminal on Long Wharf. The reasons of appeal are that said order is unreasonable and improper, (1) because the law requires the granting of the application; (2) because the order is not justified by the evidence.

The issue raised by the appeal, it is admitted, is one of fact not of law. The decision of the commission, as stated therein, was not influenced by considerations of public convenience and necessity or of the control of competition in interstate commerce.

Petitioner was granted a certificate to operate five jitneys and enough more to take care of traffic between Newport and Boston on a route beginning at the junction of Broadway and Mann avenue in Newport, thence northerly along Broadway to the State line.

The members of the commission visited Newport and investigated the traffic conditions. Thereafter a public hearing was held by the commission at which the City of Newport, through its city solicitor, appeared and opposed the granting of the petition for the particular route and terminal requested. In its decision the commission states that it has had previous applications for jitney routes over lower Broadway and Washington Square and that, after lengthy hearings at which all phases of the matter have been thoroughly discussed, it has made a rule that terminals for interstate jitney routes must be established at or north of Mann avenue on Broadway and that interstate jitneys shall be excluded from the area south of Mann avenue.

The traffic situation at and near petitioner's proposed terminal on Long Wharf is peculiar and not easily understood without a view of the locus. Broadway is the only highway running northerly to the State line from the business section of Newport at the junction of Broadway at the point known as Washington Square and Thames street. From the State line Broadway is a wide highway which runs southwesterly to Washington Square; there, for a

short distance, it is not so wide, and then again it is of the general width and continues about 500 feet westerly to Thames street. This latter street from the junction at Washington Square is a narrow one-way street running north and south parallel with the water front. There is a line of stores and shops on both sides of Thames street; on the west side are many passageways to docks and ferry landings.

Directly across Thames street from Washington Square and extending into the harbor is a narrow passageway and pier known as Long Wharf. On the sides of this way are private buildings and landing places for boats; at the end is a steamboat landing. Fish is transported regularly by motor trucks from the boat landings to places in and outside of the State. Parking of motor vehicles for thirty minutes is allowed on the east side of Thames street and on the north side of Washington Square north of the junction at Thames street; on the south side of the square are taxicab stands. In addition to the usual local traffic a large tourist traffic passes through Washington Square, thence southerly on Thames street to enter the Ocean Drive.

Petitioner has an option to lease a part of a parcel of land on the side of Long Wharf for a terminal for his jitneys. It appears in the evidence that the Short Line, Inc., the successor to a company which formerly operated trolley cars between Newport and Fall River, Mass., has for some years been operating motor busses through lower Broadway into Washington Square and that this is the only interstate carrier which runs into that area; also that as a result of negotiations between the City of Newport and Short Line, Inc., that company has now in process of construction a terminal building on a street near Broadway and that the use of this terminal will result in the removal of these busses from the lower part of Broadway and Washington Square.

Petitioner claims that the order of the commission discriminates unfairly against him and in favor of the Short

Line, Inc. The particular order complained of is intended to prevent additional congestion of traffic in the business center of the city. The issue is primarily not one of the freedom of interstate travel but of the right of petitioner to select a particular terminus for such travel.

The apparent object of petitioner in the selection of this terminal location was to constrain the commission to permit him to run his jitneys through an area now overburdened with traffic. Petitioner says he does not ask for a terminus on Broadway and, so far as appears in the record and from the argument of counsel in this court, he does not want one there, unless he is permitted to select the location. Mann avenue is about a third of a mile north of the junction of Washington Square and Thames street and about 425 feet north of the City Hall on Broadway.

The terminus offered to petitioner is a little farther from Thames street than the new terminus of the Short Line, Inc. To some extent this may be a disadvantage to him; but if such is the result, it is due to the fact that the Short Line, Inc., has been permitted to erect its terminal building in an area which, because of increased traffic, has now become unsuited for interstate terminals and not because of unfair discrimination between the two carriers. It is to be noted that petitioner does not ask to be permitted to establish his terminal in a similar location. He claims the legal right to run his jitneys even farther into the business section than the Short Line, Inc., is permitted to go.

In the absence of national legislation covering the subject, a State, in the exercise of its police power, may regulate interstate vehicular travel upon its highways. Such regulation must, so far as is practical, be uniform and nondiscriminatory. *Hendrick* v. *Maryland,* 235 U. S. 610. In *Morris* v. *Duby,* 274 U. S. 135, it was held that an order of the highway commission of the State of Oregon reducing the maximum load of motor trucks upon a State highway from 22,000 to 16,500 pounds was reasonable and valid and

applicable to vehicles engaged in interstate commerce; that the mere fact that a truck company may not be able to make a profit unless it can use a truck with a load weighing 22,000 pounds or more does not make a regulation forbidding such a load-weight either discriminatory or unreasonable, and that, in the absence of fraud or an abuse of discretion, the court must accept the judgment of the highway commission upon this question which is committed to their decision as against merely general averments denying their official finding.

It is a self-evident proposition that modern conditions often require a separation in some areas of local and interstate traffic. Such a separation, if reasonable and made in good faith, can not properly be regarded as discriminatory.

The commission has investigated the local traffic conditions and we are satisfied that they have acted in good faith. Has there been an abuse of its discretion? We think not. Petitioner does not claim that his business will suffer if he leaves his in-coming passengers at Mann avenue. His loss of profit, if any, will result from his inability to pick up out-going passengers within the forbidden area. But this consideration is not controlling if the order of the commission is reasonable as it is in the case at bar.

For the reasons stated the appeal of the petitioner from the order denying his application is denied and dismissed and the order appealed from is sustained.

HAHN, J., dissenting. This is an appeal from the refusal by the Public Utilities Commission of Rhode Island to grant appellant a certificate authorizing him to operate motor vehicles known as jitneys to and from a privately owned terminal on Long Wharf in the City of Newport and along that portion of an interstate route between Newport and Boston, Massachusetts, as lies within this State.

It appears that the respondent commission has offered to grant a certificate to operate but has denied the terminal and modified the route specified, on the alleged ground that

the use of such terminal and route would augment the present congestion of traffic in Newport and would conflict with their previous ruling that no interstate busses be allowed to operate south of the corner of Mann avenue and Broadway, in Newport. The certificate offered to but refused by appellant designates said corner as the terminal for his busses.

The extent to which a State may regulate and control within its borders carriers engaged in interstate commerce is stated by the United States Supreme Court in *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, at 201, in the following language: "A State, while possessing power to adopt reasonable measures to promote and protect the health, safety, morals and welfare of its people, even though interstate commerce be incidentally or indirectly affected, has no power . . . by the imposition of conditions to fetter their right to carry on such commerce, or to subject them . . . to requirements which are unreasonable or pass beyond the bounds of suitable local protection. . . . If it were otherwise, the purpose of the Constitution to secure and maintain the freedom of commerce by whomsoever conducted could be largely thwarted by the States and the commerce itself seriously crippled."

The question in this case is whether the facts brought out in the evidence regarding traffic conditions render the action of the commission necessary for "suitable local protection."

To determine the traffic situation, upon which the decision of the commission was largely based, it is necessary to examine the character of the highways over which appellant desires to pass to and from the terminal requested. From the plats on file it appears that Broadway, the main thoroughfare from said State line into Newport, along which appellant's busses would travel, is a wide highway. Mann avenue, whose intersection with Broadway forms the corner designated by the commission for appellant's terminal, is a side street about a quarter of a mile from the be-

ginning of the business district, at Washington Square. Washington Square is extremely wide, varying from 62 to 118 feet between curbs, and is a continuation of Broadway. At certain parts of both these streets the width is so great that automobiles are permitted to park at angles to the curb. At the intersection of Washington Square and Thames street, a narrow, main thoroughfare, traffic is controlled by a signal light. Long Wharf, the way on which appellant proposes to locate his terminal, is a combined street and wharf leading out of this intersection, and is not a regular, main highway. Lastly, the property chosen for said terminal is privately owned.

In my opinion such a condition does not offer adequate grounds for the decision of the commission. Appellant wishes to traverse main thoroughfares of ample width. Along Thames street, the only narrow highway, he does not ask to travel but only to cross, and this crossing, directed by signal, should not offer any traffic complication. There is nothing apparent in the traffic conditions of either Long Wharf, the Thames street intersection, Washington Square or Broadway which would render burdensome the inclusion of approximately two Pierce Arrow limousines every two hours. To deprive appellant of a terminal on private property on a side street and of a route which appears in every way reasonable passes beyond the bounds of "suitable local protection."

The ruling of the commission requiring appellant, as well as all other bus companies, to operate their lines at or north of Mann avenue and Broadway does not seem necessary according to the above-described traffic conditions. To designate for a terminal property so far from the business center of the city and to forbid the operation of interstate busses any nearer the center than said terminal seems unnecessary and impractical. The size of the City of Newport cannot require a proscription of public service corporations which is not requisite in cities greater in size and infinitely more congested as to traffic. To remove a line whose

business is the transportation of passengers so far from those sections most frequented by potential customers is to prevent appellant from conducting his business with any probability of success. The fact that streets are occasionally congested by traffic should offer no substantial reason for compelling such carriers to locate their termini great, and thereby inconvenient, distances from the business and traffic centers of a city.

It also appears that one interstate bus company, the Short Line, Inc., has been operating within the area restricted by the commission and from a terminal about 1,000 feet nearer to the business center than is Mann avenue. The commission explains that this apparent discrimination arises, amongst other reasons, from the fact that said Short Line, Inc., was established before the ruling limiting bus routes and that it has now built a terminal which will eliminate lower Broadway from its route. However, it further appears that its new terminal is still contiguous to Washington Square and that it will still be operating from a point much nearer the traffic centers than appellant's busses if his terminal be at or north of Mann avenue and Broadway.

This testimony tends to show that the commission's decision in the instant case, whatever its basis, is in effect discriminatory against appellant. To allow one interstate transportation company to have its terminal and route within the business section, the most suitable and convenient place to take on passengers, and to use the main highways, and at the same time to prohibit appellant's similar line from having a terminal on private property in the same district and from traversing substantially the same highways as his competitor is to create a practical monopoly for the favored line.

In my opinion the above facts—the average amount of the traffic, the wide highways, the impracticability of the terminal and route offered to appellant and the apparent discrimination in favor of another interstate transportation

company—show the decision of the commission to be unreasonable, unnecessary and an unjustifiable interference with interstate commerce.

The order of the commission should be reversed and the petition of the appellant should be granted.

*George Helford,* for petitioner.

*Benjamin M. McLyman, Atty. Gen., Sigmund W. Fischer, Jr., Asst. Atty. Gen.,* for respondent.