C. A. BRADLEY, DOING BUSINESS AS WOLVER- INE MOTOR FREIGHT LINES, *v.* PUBLIC UTILITIES COMMISSION OF OHIO

No. 395. Argued January 20, 23, 1933.—Decided April 10, 1933

*Mr. LaRue Brown*, with whom *Mr. John T. Scott* was on the brief, for appellant.

*Mr. Thomas J. Herbert*, with whom *Mr. John W. Bricker*, Attorney General of Ohio, was on the brief, for appellee.

Mr. Justice Brandeis delivered the opinion of the Court.

Bradley applied to the Public Utilities Commission of Ohio for a certificate of public convenience and necessity to operate by motor as a common carrier of property over State Route No. 20, extending from Cleveland, Ohio, to the Ohio-Michigan line, with Flint, Michigan, as final destination. The New York Central Railroad and the Pennsylvania Railroad, opposing, moved that the application be dismissed on the ground of the present congested condition of that highway. Upon a full hearing, the Commission found " that said State Route No. 20, at this time, is so badly congested by established motor vehicle operations, that the addition of the applicant's

proposed service would create and maintain an excessive and undue hazard to the safety and security of the travelling public, and the property upon such highway." It therefore ordered: " That in the interest of preserving the public welfare, the application be, and hereby is, denied."

In a petition for a rehearing, which was also denied, Bradley urged, among other things, that denial of the application for the certificate on the ground stated violated rights guaranteed to the applicant by the commerce clause of the Federal Constitution and the equality clause of the Fourteenth Amendment. The same claims were asserted in a petition in error to the Supreme Court of the State; were there denied (125 Ohio State 381; 181 N.E. 668) upon the authority of *Motor Transport Co.* v. *Public Utilities Co.,* 125 Ohio State 374; 181 N.E. 665; and are renewed here upon this appeal. We are of opinion that the claims are unfounded.

*First.* It is contended that the order of the Commission is void because it excludes Bradley from interstate commerce. The order does not in terms exclude him from operating interstate. The denial of the certificate excludes him merely from Route 20. In specifying the route, Bradley complied with the statutory requirement that an applicant for a certificate shall set forth " the complete route " over which he desires to operate. Ohio General Code, § 614-90 (c). But the statute confers upon an applicant the right to amend his application before or after hearing or action by the Commission. § 614-91. And it authorizes him, after the certificate is refused, to " file a new application or supplement any former application, for the purpose of changing " the route. § 614-93. No amendment of the application was made or new application filed. For aught that appears, some alternate or amended route was available on which there was no congestion. If no other feasible

route existed and that fact was deemed relevant, the duty to prove it rested upon the applicant. It was not incumbent upon the Commission to offer a certificate over an alternate route.

*Second.* It is contended that an order denying to a common carrier by motor a certificate to engage in interstate transportation necessarily violates the Commerce Clause. The argument is that under the rule declared in *Buck* v. *Kuykendall*, 267 U.S. 307 and *Bush & Sons Co.* v. *Maloy*, 267 U.S. 317, an interstate carrier is entitled to a certificate as of right; and that hence the reason for the commission's refusal and its purpose are immaterial. In those cases, safety was doubtless promoted when the certificate was denied, because intensification of traffic was thereby prevented. See *Stephenson* v. *Binford*, 287 U.S. 251, 269–272. But there, promotion of safety was merely an incident of the denial. Its purpose was to prevent competition deemed undesirable. The test employed was the adequacy of existing transportation facilities; and since the transportation in question was interstate, denial of the certificate invaded the province of Congress. In the case at bar, the purpose of the denial was to promote safety; and the test employed was congestion of the highway. The effect of the denial upon interstate commerce was merely an incident.

Protection against accidents, as against crime, presents ordinarily a local problem. Regulation to ensure safety is an exercise of the police power. It is primarily a state function, whether the *locus* be private property or the public highways. Congress has not dealt with the subject. Hence, even where the motor cars are used exclusively in interstate commerce, a State may freely exact registration of the vehicle and an operator's license, *Hendrick* v. *Maryland*, 235 U.S. 610, 622; *Clark* v. *Poor*, 274 U. S. 554, 557; *Sprout* v. *South Bend*, 277 U.S. 163, 169; may require the appointment of an agent upon whom

process can be served in an action arising out of operation of the vehicle within the State, *Kane* v. *New Jersey*, 242 U.S. 160; *Hess* v. *Pawloski*, 274 U.S. 352, 356; and may require carriers to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries resulting from their operations. *Continental Baking Co.* v. *Woodring*, 286 U.S. 352, 365-366. Compare *Packard* v. *Banton*, 264 U.S. 140; *Sprout* v. *South Bend*, 277 U.S. 163, 171-172; *Hodge Co.* v. *Cincinnati*, 284 U.S. 335, 337. The State may exclude from the public highways vehicles engaged exclusively in interstate commerce, if of a size deemed dangerous to the public safety, *Morris* v. *Duby*, 274 U.S. 135, 144; *Sproles* v. *Binford*, 286 U.S. 374, 389-390. Safety may require that no additional vehicle be admitted to the highway. The Commerce Clause is not violated by denial of the certificate to the appellant, if upon adequate evidence denial is deemed necessary to promote the public safety. Compare *Hammond* v. *Schappi Bus Line*, 275 U.S. 164, 170-171.[1]

*Third.* It is contended that the order is void under the Commerce Clause because the finding of congestion of Route 20 is unsupported by evidence. The argument is that the only evidence introduced on that issue consisted of two traffic counts, both in the single city of Fremont; that this evidence was insufficient because Route 20 extends for only 2.2 miles through Fremont, whereas the total length of the portion which would be traversed is about 100 miles; and that the evidence was conflicting. The evidence was adequate to support the finding.

[1] See also *Johnson Transfer & Freight Lines* v. *Perry*, 47 F. (2d) 900, 902; *Phillips* v. *Moulton*, 54 F. (2d) 119; *Newport Electric Corp.* v. *Oakley*, 47 R.I. 19; 129 Atl. 613; *Farnum* v. *Public Utilities Comm'n*, 52 R.I. 128; 158 Atl. 713. Compare contra, *Red Ball Transit Co.* v. *Marshall*, 8 F. (2d) 635, 639; *Magnuson* v. *Kelly*, 35 F. (2d), 867, 869.

Moreover, no such objection is set forth in the statement as to jurisdiction filed pursuant to Rule 12.

*Fourth.* It is contended that the statute as applied to the plaintiff violates the equal protection clause of the Fourteenth Amendment. There is no suggestion that the plaintiff was treated less favorably than others who applied at the same time or thereafter for certificates as common carriers; nor is there any suggestion that the classification operates to favor intrastate over interstate carriers. One argument is that the statute discriminates unlawfully against common carriers in favor of shippers who operate their own trucks. In dealing with the problem of safety of the highways, as in other problems of motor transportation, the State may adopt measures which favor vehicles used solely in the business of their owners, as distinguished from those which are operated for hire by carriers who use the highways as their place of business. See *Packard* v. *Banton,* 264 U.S. 140, 144. Compare *Bekins Van Lines* v. *Riley,* 280 U.S. 80, 82; *Continental Baking Co.* v. *Woodring,* 286 U.S. 352, 373; *Sproles* v. *Binford,* 286 U.S. 374, 396. Another objection is that to deny certificates to subsequent applicants discriminates unlawfully in favor of carriers previously certificated. But classification based on priority of authorized operation has a natural and obvious relation to the purpose of the regulation. Conceivably, restriction of the volume of traffic might be secured by limiting the extent of each certificate-holder's use. But that would involve re-apportionment whenever a new applicant appeared. The guaranty of equal protection does not prevent the State from adopting the simple expedient of prohibiting operations by additional carriers.

There is a further argument that the statute discriminates unlawfully between common and contract carriers. It rests upon the assumption that the statute is, as a

matter of construction, inapplicable to contract carriers. On the question of construction, there appears to be no authoritative decision.[2] We have no occasion to consider that question. For it does not appear that there has been discrimination against the plaintiff in favor of contract carriers. Compare *Supervisors* v. *Stanley*, 105 U.S. 305, 314.                                   *Affirmed.*

---

[2] Compare Act of March 29, 1923, 110 Ohio Laws, pp. 211, 212–213; *Hissem* v. *Guran*, 112 Oh. St. 59; 146 N.E. 808; Act of April 11, 1925, 111 Ohio Laws, pp. 512, 513, 515; *Motor Freight, Inc.* v. *Public Utilities Comm'n*, 120 Oh. St. 1; 165 N.E. 355. Following the last decision, the statute was amended by Act of April 19, 1929, 113 Ohio Laws, p. 482.