RAILROAD COMMISSION et al. v. McDONALD.

No. 8284.

Court of Civil Appeals of Texas. Austin.

Jan. 8, 1936.

William McCraw, Atty. Gen., and George P. Kirkpatrick, Asst. Atty. Gen., for appellant.

Carl Phinney, of Dallas, and Felts & Wheeler, of Austin, for appellee.

BAUGH, Justice.

Appellee, McDonald, applied to the Railroad Commission for a motor carrier permit to operate trucks over several cardinal highways in Texas in hauling what he desig-

nated as interstate commerce, though his application shows that he contemplated carriage of freight almost entirely within the state. His application was heard by the commission on May 15, 1934, and was by the commission denied on July 14, 1934. The order of the commission denying the permit found numerous facts as to the use of the highways generally by trucks, including several of the highways on which McDonald proposed to operate in and about designated cities, the injuries such operations would inflict upon portions of such highways, the dangers to the traveling public thereon occasioned by such operations, and refused the permit, obviously on the ground that, as to at least portions of the highways sought to be used, such operation would place an undue burden upon the physical properties of the highways themselves, would endanger public safety, and would interfere with the use thereof by the public.

Appellee appealed from such order by filing suit in the district court of Travis county to enjoin the commission and its enforcement officers from interfering with his operations over the routes applied for, on the ground that the commission's order was arbitrary, unjust, and unreasonable as to him, and without evidence to support it. A temporary injunction was granted as prayed for and upon hearing was made permanent, from which judgment the commission prosecutes this appeal.

Appellee's place of business was at Waxahachie, Tex. His application sought a permit to operate from there to Oklahoma through Dallas, Denton, Gainesville, and Denison, over state highways 34, 10, and 40; from Waxahachie to Galveston via Ennis over state highway 34; thence over federal highway 75 through Corsicana, Huntsville, and Houston, and to the same point over state highways 6 and 2 to Waco, and highway 6 from there to Houston via Bryan and Hempstead; from Waxahachie to McAllen over highway 6 to Hillsboro, thence over highway 2 to San Antonio, thence over highway 66 to McAllen.

Trial was to the court without a jury. The original evidence introduced on the trial of this case was meager; but by agreement of counsel, and with the approval of the trial court, there was introduced in evidence a transcript of the testimony heard by the Railroad Commission on McDonald's application, and that heard by the commission on the application of Wald Transfer & Storage Company, on January 15–17,

1934, for a permit to operate trucks over and upon several of the same highways involved in McDonald's application, with the agreement that the facts therein shown should be considered by the trial court in this case; and, further, that in the hearing before the commission, the evidence offered in the Wald application should be considered by the commission in passing upon McDonald's application. There was also introduced in evidence the order of the Railroad Commission granting to Wald, on March 29, 1934, the permit applied for. It was also agreed that the commission had reconsidered and reopened the Wald case, and that same was still pending at the time of the trial hereof.

Upon application, the trial court filed findings of fact and conclusions of law. These findings are first attacked upon this appeal. The first finding of the trial court complained of is, "that there was present at the hearing (before the Railroad Commission) only the applicant, and that there was no testimony introduced protesting the granting of this certificate." This finding cannot be sustained. The statement of facts shows that counsel appeared before the commission at the hearing on McDonald's application, made agreements with his counsel as to evidence the commission should consider on that hearing, and as to material facts relating to same. Among other things, that the commission should consider at that hearing the testimony offered at hearings before the commission on applications made by Beard and by Wald Transfer & Storage Company to operate trucks over the same highways; the transcript of the evidence in the Wald hearing being brought up as an exhibit and a part of the record in the instant case. In the Wald hearing, several protestants appeared, the hearing lasted three days, and extensive evidence was introduced relating to the condition of the various highways, protests of various citizens against such permits, congested traffic conditions, dangers and inconvenience to the public using such highways caused by such truck operations, and damages to sections of such highways caused by truck operations. These matters all thus being made by agreement a part of the record in the instant case, and it being agreed that the trial court should so consider them, it affirmatively appears that this finding by the trial court was erroneous.

The trial court also found as a fact that such operation by appellee over such high-

ways would not unreasonably interfere with the use thereof by the public; that such use by appellee would not put upon the highways themselves any present or future undue burden on the physical properties thereof, because appellee was already using same in conducting his private business; that the commission did consider, in passing upon appellee's application, the testimony heard by it in the Wald case; and that it did grant Wald such permit.

While the testimony adduced in the Wald case was perhaps sufficient, if the order of the Railroad Commission be disregarded, to sustain an independent finding of the trial court of the facts recited as to burdens upon the highways and interference with the use thereof by the public, this is not the test to be applied in appeals from orders of the commission entered after proper hearing and consideration. The test is, not what the court's independent judgment might be, but whether there was substantial evidence before the commission to sustain its order. Regulation of the use of the public highways is not delegated by law to the courts, but is expressly delegated to the commission, and the only pertinent inquiry in an appeal to the court is whether the commission has legally exercised the power granted to it. The statutes (articles 911a and 911b, Vernon's Ann.Civ.St.), as variously amended, prescribe at length and in detail the powers and duties of the commission with respect to such regulation. So long as the commission exercises such supervision reasonably and in conformity with the statute, their orders should be given a high degree of verity, and, unless clearly illegal or arbitrary, should not be stricken down. Railroad Commission v. Shupee (Tex.Civ.App.) 57 S.W.(2d) 295; affirmed by Supreme Court in 123 Tex. 521, 73 S.W. (2d) 505; Texas Motor Coaches v. Railroad Commission (Tex.Civ.App.) 59 S.W.(2d) 923, affirmed by Supreme Court in 123 Tex. 517, 73 S.W.(2d) 511.

As a basis for, and as a part of, the commission's order attacked in the instant case, and in compliance with section 12, chap. 277, Acts Reg.Sess. 42nd Leg., 1931 (Vernon's Ann.Civ.St. art. 911b, § 12), which requires the commission, where an application is contested, to "file a concise written opinion setting forth the facts and grounds for its action," the commission made and filed rather extensive findings. We quote excerpts therefrom, as follows:

"The Commission has had before it during the last few months a number of applications of the same nature as this, in which the applicants have asked for the privilege of using many of the principal highways of the State in the same manner as this applicant. In order for the Commission to determine whether, in its opinion, certain highways of this state are carrying all of the truck traffic that can be safely entrusted on said highways without unreasonably interfering with the use thereof by the general public, the Commission has held a number of hearings in various portions of the state in order that local officials, who are familiar with the condition of the highways in their respective localities and the amount of traffic that such highways are forced to carry, might be able to testify under oath concerning the same. Probably more than a hundred County Judges, County Commissioners, County Attorneys, Mayors, Members of the City Councils, Managers of Chambers of Commerce, School Superintendents, newspaper editors, merchants and other citizens have testified at these hearings against the granting of additional truck permits over highways through their cities and counties. * * *

"Some witnesses testified that if business called them to Houston, Dallas, or other large cities and they were unable to conclude their business before dark they spent the night in such cities rather than risk themselves upon the highways after night. Many of these officials and citizens of their communities were deprived of the use of some of the principal highways by reason of the heavy traffic over said highways leading to aforesaid centers of population, and that they would use the highways more, especially at night, were it not for the fact that truck traffic thereon caused such hazardous conditions that made them fear for their lives and limbs. * * *

"Dallas is one of the largest inland cotton concentration points in the world, while Houston and Galveston are two of the principal cotton shipping ports. Hundreds of thousands of bales of cotton have, in the past, moved by truck over the highways between Dallas and Houston while still many more bales passed through the State of Texas from points in Oklahoma and Arkansas destined for these port cities. * * *

"The fact that truck traffic uses the highways to the maximum at night only adds to

their hazards and these hazards are magnified in the case of those citizens whose duties prevent them from enjoying the highways for recreation purposes during daylight hours and who, perhaps, are not expert drivers at night. The large toll of deaths and injuries on the most highly improved highways, in which trucks are involved, leads the Commission to place even more credence to the evidence gathered at the hearings for the purpose of ascertaining the condition of such highways, and is cumulative of the testimony of the many disinterested citizens witnesses and officials, that these highways are already carrying as much or more truck traffic than is reasonably safe for the general public. * * *

"The evidence conclusively showed that it was impossible for an ordinary passenger car and a truck of the width permitted under the general laws of this state to pass each other upon the roads of this character without one or both of such vehicles being compelled to traverse the dirt shoulder. It was further shown that trucks, by reason of their weight, were more jealous of holding the center of the road during wet weather than at other times as they were likely to become more unmanageable when turning out upon the wet dirt shoulders and this naturally adds to the hazards of the citizens using the highways for pleasure or in the ordinary pursuit of their business. * * *

"In many instances schools, churches, business houses and gins are located alongside of or closely adjacent to the state highway and it is necessary for citizens and children to use these highways daily, and they should not be called upon to risk their lives and limbs by having placed upon these highways such additional traffic as would unreasonably interfere with their use by such citizens and children. * * *

"There are at this time some five hundred trucks authorized to be operated out of Dallas as common carriers and one hundred and twenty-two trucks as contract carriers, while there are some four hundred common carriers operating out of Houston and fifty or sixty contract carrier trucks. In addition there are several hundred special commodity trucks operating out of Dallas and Houston, engaged in the transportation of various commodities but principally that of oil field equipment."

The statute likewise makes this opinion of the commission admissible in evidence on an appeal from its order. Such findings of fact, therefore, by the commission, set out as a part of its order, are entitled to the same degree of verity as the order itself. While the findings above quoted are general in many respects, and based upon hearings of other applications than that of McDonald, it affirmatively appears that they are applicable to the cities and highways through and over which McDonald sought to operate. We do not understand, nor do we think the Legislature ever contemplated, that the Railroad Commission should be required, each time an applicant sought a permit to use a state highway for commercial purposes, to conduct extensive hearings over and over again, as to the condition of such highway, the traffic thereon, and the public convenience in the use of such highway. When these facts are ascertained by the commission, as related to cardinal public highways of the state, in the absence of a showing that conditions have changed thereon since the ascertainment of such facts, the Railroad Commission may properly act upon applications for permits to operate upon such highways, based upon the facts and conditions relative to such highways theretofore properly and adequately obtained, without the necessity of detailed proof thereof on each and every application presented to it. Its findings with reference thereto, as recited in its orders, will be presumed to have been supported by competent evidence, unless the contrary is made to appear upon an appeal from its order.

From the trial court's finding and from argument presented in appellee's brief, we infer that the judgment of the trial court was based largely upon the fact shown that the commission had granted on March 29, 1934, to Wald Transfer & Storage Company a permit to operate over the same highways as a motor carrier. It is agreed, however, that the commission had the Wald application under reconsideration at the time of the trial. We have read the testimony brought up as a part of this record which was heard by the commission on Wald's application. It is unnecessary to detail it here. It was clearly sufficient to have authorized the commission to deny Wald's application; and the fact that the commission had, after granting such application, reconsidered and reopened the Wald case, might indicate that such was its purpose. Regardless of that, however, that testimony was sufficient to show not only prospective injury to portions of such highways as a result of added bur-

dens on same; but an added safety hazard to the traveling public, and public inconvenience as well. It is to be noted also that McDonald's application was not heard until after that of Wald Transfer & Storage Company had been acted upon. The commission could, therefore, have found, even if Wald be permitted to operate, that any additional operations over such highways would result in damage to the highways and dangers and inconvenience to the public. Such was its prerogative. The mere granting of one permit to a motor carrier over the highway is no evidence that another applicant is entitled to be granted such privilege over the same highway. The use made of it by the first permittee may be all that the public convenience and public safety will permit. And if, in the opinion of the commission, based upon substantial evidence, the operations of Wald over such highways, even if his permit is not revoked, increased the traffic thereon as much as the public convenience and public safety would warrant, it was the function and duty of the commission to deny McDonald's application, though it had already granted that of Wald to operate upon the same highways. The use of the public highways for profit by an individual is not a matter of right but a mere privilege, subordinate at all times to the use thereof by the public. No question as to rates on interstate operation is here involved, and no discrimination as between permittees. The power of the commission herein exercised obviously was not an attempt to regulate interstate commerce, but a legitimate exercise of the police power of the state in the use of its highways with regard to the preservation thereof and the safety and convenience of the public. The effect on interstate commerce was, therefore, but incidental. Under these circumstances, the state is not denied by the Federal Constitution (article 1, § 8, cl. 3) the power to regulate the use of its property in the interest of public safety and public convenience, even though in doing so such regulation incidentally affect interstate operations of such trucks upon its highways. See Bradley v. Public Utilities Comm., 289 U.S. 92, 53 S.Ct. 577, 77 L.Ed. 1053, 85 A.L.R. 1131; Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402; Stephenson v. Binford, 287 U.S. 251, 260, 53 S.Ct. 181, 77 L.Ed. 288, 292, 87 A.L.R. 721; Texport Carrier Corp. v. Smith (D.C.) 8 F.Supp. 28; Wald Storage & Transfer Co. v. Smith (D.C.) 4 F. Supp. 61.

All of the matters here presented were passed upon and determined prior to the passage and effective date of what is known as the Federal Motor Carrier Act of 1935 (49 U.S.C.A. § 301 et seq.), effective August 9, 1935, and we have not taken that act into consideration in determining the issues here presented.

 Having reached the conclusion that the record presented shows that the order of the Railroad Commission, and the findings made by the commission, as provided for in section 12, chap. 277, Acts Reg.Sess., 42nd Leg., 1931, were based upon substantial evidence; and that the order is not unreasonable nor arbitrary as to appellee, the judgment of the trial court is reversed, and the injunction granted is in all things dissolved.

Reversed, and injunction dissolved.