THE STATE OF OHIO, APPELLANT, *v.* SWARTZ, APPELLEE.

(No. L-80-144—Decided November 28, 1980.)

*Mr. Anthony G. Pizza,* prosecuting attorney, *Mr. James D. Bates* and *Ms. Julia A. Griffis,* for appellant.

*Messrs. Connelly, Soutar & Jackson, Mr. William M. Connelly* and *Mr. James D. Caruso,* for appellee.

BROWN, J. The state appeals a final order of the Court of Common Pleas of Lucas County granting defendant-appellee's pretrial motion *in limine.* The motion sought to preclude the state from making any reference during trial to Section 32-2-1 of the Toledo Municipal Code. The motion *in limine* was predicated upon the alleged unconstitutionality of the ordinance.

On September 22, 1979, Jill Powers, Cindy Clark and John Flores were in a Chevrolet automobile traveling south on Westwood Avenue in Toledo, Ohio. At about 9:30 p.m. they

came to a 12-track railroad crossing near the intersection of Westwood and Hill Avenues. The car slowed to about 10 miles per hour and started slowly across the tracks. They safely crossed the first 11 sets of tracks and were approaching the twelfth and final set of tracks, when, suddenly, a 61-car freight train appeared from behind a parked train. The freight train was going about 25 miles per hour. There was a faint whistle, and the engine of the train struck the Chevrolet, which, by then, was in the middle of the twelfth set of tracks. All three occupants of the car were killed.

At the time of the accident, defendant-appellee, Donald L. Swartz, was the train's engineer. The train was owned by Consolidated Rail Corporation, also known as Con Rail.

Shortly after the accident, the Lucas County Grand Jury issued a three-count indictment against the defendant, charging him with violating R. C. 2903.06 (aggravated vehicular homicide) by causing the three deaths.

On February 11, 1980, the defendant's counsel filed a motion *in limine* to preclude the state from making any reference to Section 32-2-1 of the Toledo Municipal Code during the impending trial. Section 32-2-1 of the Toledo Municipal Code (hereinafter referred to as Section 32-2-1), enacted in 1919, states:

"No owner, agent, conductor, engineer or other employee, or person, shall cause or allow any locomotive engine, car, or train of cars, to run upon or along any railroad track within the corporate limits of the City of Toledo at a greater rate of speed than ten miles an hour, nor cause or allow the same to cross or enter upon any street or public highway, where travel is upon the grade of the railroad track, within the City limits, at a greater rate of speed than six miles an hour, nor at a less rate of speed than three miles an hour."

The trial court held an evidentiary hearing and, on May 9, 1980, granted the motion *in limine*. The relevant part of the judgment entry is as follows:

"***The court finds specifically that the section of the Toledo Municipal Code referred to is unreasonable and unnecessary for the public safety. The court further specifically finds that the said ordinance constitutes an unlawful and unconstitutional restraint upon interstate commerce. Having so

found, as a result of clear and convincing proof, the Court has no alternative but to grant the motion in limine.

"It is therefore Ordered that the prosecution in the trial of this cause is precluded from the introduction of §32-2-1 of the Toledo Municipal Code into evidence and is further precluded from making reference to any of its provisions."

The state has appealed this pretrial judgment pursuant to R. C. 2945.67.

The state has presented the following assignment of error:

"The trial court erred by invalidating Toledo Municipal Code 32-2-1."

Section 8, Article I, of the United States Constitution provides, in relevant part, that Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

The grant of this power gave the regulation of interstate commerce to Congress and removed from the states any authority to deal with local matters that could be considered "commerce" pursuant to Section 8, Article I, of the United States Constitution.

In *Cooley* v. *Board of Wardens* (1851), 53 U. S. (12 How.) 299, the United States Supreme Court differentiated between interstate (national) and intrastate (local) commerce. *Cooley* held that commercial subjects requiring a uniform national regulation could be regulated only by Congress, while subjects of local concern were subject to local control. *Id.*, at page 319. Under *Cooley,* local or state regulations in areas requiring uniform national regulation must be invalidated by the courts as unconstitutional invasions of congressional power.

The United States Supreme Court has been sympathetic toward local attempts to promote railroad and highway safety. For instance, the court upheld two Arkansas statutes that required railroads operating lines greater than specified distances to have crews of at least a designated minimum. See *Brotherhood of Locomotive Firemen & Enginemen* v. *Chicago, Rock Island & Pacific Rd. Co.* (1968), 393 U. S. 129. In *Bradley* v. *Public Utilities Commission of Ohio* (1933), 289 U. S. 92, the United States Supreme Court upheld Ohio's refusal to license an interstate common carrier over a highly congested route. The legacy of *Cooley* is, therefore, clear: "* * * great leeway is allowed local authorities, even though the

local regulation materially interferes with interstate commerce.***" *Railway Express Agency, Inc.,* v. *New York* (1949), 336 U. S. 106, 111.

Even though the states are to be allowed great leeway in regulating actions materially affecting interstate commerce, they may not regulate interstate commerce itself. The determination of whether a commercial subject is national (interstate), or local (intrastate) in character, "***necessarily involves a sensitive consideration of the weight and nature of the state regulatory concern in light of the extent of the burden imposed on the course of interstate commerce.***" *Raymond Motor Transportation, Inc.,* v. *Rice* (1978), 434 U. S. 429, 441.

The defense in this case presented credible evidence supporting the allegation that the three to six-mile-an-hour speed limit mandated by Section 32-2-1 posed a greater danger to motorists than a 25 to 50-mile-an-hour limit. The defense called Andrew Browning as a witness. He testified that he had held various jobs with the Chessie System Railroad over a 30-year period. He stated that motorists tended to disregard railroad safety devices more when a train was moving slowly than when it was going fast. He said people would always try to beat a slow-moving train across the track.

Browning also stated that a fast-moving train provided more safety to some of its occupants than would a slow-moving train. He said that if a train was going six miles per hour and was thrown into an emergency stop "for all intent and purposes, for the people in the back end it's like running into a brick wall."

The state made no effort to contradict this evidence with an expert witness of its own.

The defense also produced uncontradicted evidence showing that the operation of Section 32-2-1 would substantially disrupt the railroad's service and increase its costs. For example, adherence to Section 32-2-1 would affect trains going through Toledo and connecting with other trains as far west as Chicago, or as far east as the New England States and Canada. If Section 32-2-1 was enforced, Con Rail claims it would have to spend $95,800,000 in new equipment to maintain existing schedules.

The evidence showed that about 67 Con Rail trains pass through Toledo on a daily basis. They carry mail for the United

States Post Office, automotive parts, military cargo for the Defense Department and products of the steel industry.

The state produced evidence that about 2,000 to 2,600 cars crossed the accident site everyday.

In the instant case the defendant does not dispute that a city has a legitimate interest in regulating railroad crossings. He argues that Section 32-2-1 is "***clearly excessive in relation to the putative local benefits.***" See *Pike* v. *Bruce Church, Inc.* (1970), 397 U. S. 137, 142.

We agree with the defendant. We conclude *on the record before us* that the total effect of Section 32-2-1 as a safety measure in reducing accidents is so slight as not to outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it. We are persuaded by the record in this case that the challenged portion of the Toledo Municipal Code unconstitutionally burdens interstate commerce. See *Raymond Motor Transportation, Inc.,* v. *Rice, supra.* We reach this decision because the defense has produced an impressive array of evidence, which stands unrebutted, to disprove the state's assertion that the challenged ordinance makes some genuine contribution to railroad and highway safety.

For the foregoing reasons, the judgment of the Court of Common Pleas of Lucas County is affirmed. This cause is remanded to that court for further proceedings consistent with this opinion.

*Judgment affirmed.*

POTTER, P. J., and CONNORS, J., concur.