985 F.2d 164
 24 Fed.R.Serv.3d 1268
 MEDIGEN OF KENTUCKY, INCORPORATED, Medigen of Pennsylvania,
Incorporated, Plaintiffs-Appellees,
v.
PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, Boyce Griffith,
Chairman, Otis D. Casto, Commissioner, Richard D.
Frum, Commissioner, Defendants-Appellants,
and
West Virginia Solid Waste Association, Incorporated, Defendant.
 No. 92-1245.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 30, 1992.
Decided Feb. 5, 1993.
 
 Franklin G. Crabtree, Charleston, WV, argued (Richard E. Hitt, on brief), for defendants-appellants.
 Mark E. Kauffelt, Charleston, WV, argued (T.D. Kauffelt, on brief), for plaintiffs-appellees.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and SPROUSE, Senior Circuit Judge.
 WILLIAMS, Circuit Judge:
 
 
 1
 Medigen of Kentucky, Inc., and Medigen of Pennsylvania, Inc. (collectively "Medigen"), are interstate haulers of infectious medical waste. Medigen brought this action against the Public Service Commission of West Virginia (Commission) seeking to enjoin enforcement of the Commission's requirement that collectors, haulers, and transporters of infectious medical waste obtain a certificate of convenience and necessity in order to operate within West Virginia. Following a trial on a stipulated record, the district court found the certification requirement unconstitutional under the Commerce Clause of the United States Constitution. Medigen v. Public Serv. Comm'n, 787 F.Supp. 590 (S.D.W.Va.1991) (Medigen I ), later order, 787 F.Supp. 602 (S.D.W.Va.1992) (Medigen II ). The Commission now appeals, challenging both the Commerce Clause ruling and the district court's decision allowing Medigen to amend its complaint shortly before trial to add a claim under 42 U.S.C. § 1983 (1988). We conclude that the burden on interstate commerce imposed by requiring prospective market participants to make a showing of public convenience and necessity outweighs the local benefits identified by the Commission. We also conclude that the district court did not abuse its discretion in allowing Medigen to amend its complaint. Accordingly, we affirm.
 
 
 2
 * In December 1989, Medigen began operating in West Virginia as a hauler of infectious medical waste. Medigen transports waste either to its own disposal facility in Kentucky or to a treatment facility in Pennsylvania and from there to disposal facilities in other states. Medigen's activities within West Virginia are limited to transporting medical wastes from points within the state to points outside the state; Medigen neither processes nor disposes of waste in West Virginia.
 
 
 3
 Before beginning its West Virginia operations, Medigen failed to obtain a certificate of convenience and necessity as required by Commission regulations. After a competitor complained to the Commission, Medigen applied for a certificate on April 23, 1990. A hearing was scheduled before the Commission for August 13, 1990. In the meantime, a member of the Commission's staff contacted Medigen and threatened it with criminal prosecution if it continued to operate without a certificate. Medigen responded by filing this action in district court where it obtained a temporary restraining order allowing it to continue operations without having obtained a certificate. As a result, Medigen's hearing before the Commission never occurred. After Medigen brought this action, West Virginia passed the Medical Waste Act of 1991, W.Va.Code §§ 20-5J-1 to -10 (Michie Supp.1992). Section 20-5J-10(b) of the Act codified the certification requirement.[1]
 
 
 4
 The district court held that the certification requirement was unconstitutional under the Commerce Clause. Specifically, the district court found that the certification requirement was a "direct" regulation of interstate commerce that could only be justified if it passed the test outlined in Maine v. Taylor, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). Thus, the regulation had to serve a legitimate local purpose that could not be served as well by any other means. Medigen I, 787 F.Supp. at 600 (citing Maine, 477 U.S. at 138, 106 S.Ct. at 2447). The Commission asserted that the regulation helped to insure the statewide availability of medical waste collection and transportation services. The district court was unpersuaded, finding that the evidence did not support the view that unregulated market entry would result in insufficient statewide service. Medigen II, 787 F.Supp. at 605.
 
 II
 
 5
 The Commerce Clause grants Congress the power "[t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Besides being an affirmative grant of power, the Commerce Clause also has a "negative sweep" that restricts the power of states to regulate interstate trade. Quill Corp. v. North Dakota, --- U.S. ----, ----, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992). Medigen contends that the "negative" or "dormant" Commerce Clause, id., prevents West Virginia from imposing the certification requirement in § 20-5J-10(b) of the West Virginia Code.
 
 
 6
 Section 20-5J-10(b) provides that a distinct category of certificates of convenience and necessity shall be required for hauling infectious medical waste. Under § 20-5J-10(a), collectors, haulers, and transporters of infectious medical waste who are common carriers are subject to regulation under §§ 24A-2-1 to 24A-2-5 of the West Virginia Code (Michie 1992). Section 24A-2-5 outlines the process for obtaining certificates of convenience and necessity. It provides in part that:
 
 
 7
 Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate.
 
 
 8
 W.Va.Code § 24A-2-5(a) (emphasis added).[2] Under West Virginia law, the Commission cannot grant certificates to prospective transporters of infectious medical waste unless current service is inadequate. Because market entry is only permitted if the Commission determines that the market is not adequately being served, the certification requirement necessarily limits competition, thereby implicating the dormant commerce clause.
 
 
 9
 Much of the parties' discussion has focused on the proper standard for reviewing the constitutionality of the certification requirement. They have proffered three tests. From most to least deferential, these tests are: (1) the balancing test of Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), under which the regulation is upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits"; (2) the stricter standard outlined in Maine v. Taylor, 477 U.S. at 138, 106 S.Ct. at 2447 (1986), and applied by the district court; and (3) a test under which "direct" regulations of interstate commerce are per se unconstitutional, see George W. Bush & Sons Co. v. Maloy, 267 U.S. 317, 324-25, 45 S.Ct. 326, 327, 69 L.Ed. 627 (1925); Buck v. Kuykendall, 267 U.S. 307, 315-16, 45 S.Ct. 324, 325-26, 69 L.Ed. 623 (1925); cf. Bradley v. Public Utils. Comm'n, 289 U.S. 92, 95, 53 S.Ct. 577, 578, 77 L.Ed. 1053 (1933) (distinguishing Buck and Maloy as involving anti-competitive regulations that do not serve any legitimate local purpose). Because the certification requirement is unconstitutional even under the deferential balancing test of Pike v. Bruce Church, Inc., we find it unnecessary to decide whether the requirement should be evaluated under a stricter standard. Cf. Baltimore Gas & Elec. Co. v. Heintz, 760 F.2d 1408, 1421-22 (4th Cir.) (criticizing analysis relying on the distinction between "direct" and "indirect" regulations as being "analytically unsound and result-oriented"), cert. denied, 474 U.S. 847, 106 S.Ct. 141, 88 L.Ed.2d 116 (1985).
 
 
 10
 Under the Pike balancing test, we review whether the burden that the certification requirement imposes on interstate commerce outweighs its local benefits. The Commission concedes, as it must, that the certification requirement imposes a significant burden on interstate commerce. Whether this burden "will be tolerated ... depend[s] on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Pike, 397 U.S. at 142, 90 S.Ct. at 847. Under Pike, we must examine the extent to which the certification requirement promotes local interests, and hence benefits the state, while always being conscious of the degree to which those local interests could be served by other means. See id.
 
 
 11
 The Commission contends that the certification requirement promotes local interests by insuring that service is available throughout West Virginia at reasonable prices. Restricting market entry, however, necessarily limits the available service because it limits the number of medical waste transporters from which a medical waste generator can seek service. Moreover, restricting market entry does nothing to insure that services are provided at reasonable prices. Without rate regulation, higher rather than lower prices will more likely result from limiting competition. West Virginia's goal of providing universal service at reasonable rates may well be a legitimate state purpose, but restricting market entry does not serve that purpose.
 
 
 12
 In contrast, other aspects of West Virginia's regulatory scheme do serve that purpose. For example, the Commission requires all transporters of infectious medical waste to offer their services to all medical waste generators within the territories in which they are certified to operate. (J.A. 534-35.) The Commission also regulates the prices transporters charge to their customers. See W.Va.Code § 24A-2-4 (requiring common carriers to charge "just and reasonable" rates). These regulatory tools help insure that universal service is provided at reasonable prices. Restricting market entry, on the other hand, does not serve this goal, and hence does not produce the benefits that the Commission urges justify the burden placed on interstate commerce.
 
 
 13
 The Commission also contends that the certification requirement is necessary because, without it, competition will be ruinous, resulting in monopolization of the market. Certainly where competition has destructive effects, regulation may be justified. For example, competition may result in over-investment in local infrastructure that will drive up costs over the long run. See generally Panhandle E. Pipe Line Co. v. Michigan Pub. Serv. Comm'n, 341 U.S. 329, 333-34, 71 S.Ct. 777, 779-80, 95 L.Ed. 993 (1951). Similarly, disparity in bargaining power between current and prospective market participants may justify restrictions on market entry. American Motors Sales Corp. v. Division of Motor Vehicles, 592 F.2d 219, 222-23 (4th Cir.), cert. denied, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). We find no basis in the record, however, for concluding that competition in this market has had or will have any destructive effects. Because the "ruinous" effects of competition are entirely speculative, their prevention cannot justify restricting market entry.
 
 
 14
 We conclude that West Virginia may not deny certification to a medical waste transporter, required by §§ 20-5J-10(b) and 24A-2-5, solely on the ground that the area it seeks to serve already has reasonably efficient and adequate service. We emphasize that our holding is limited to the unconstitutionality of the certification requirement as a restriction on market entry. We do not address the constitutionality of any other aspect of West Virginia's regulatory scheme.
 
 III
 
 15
 The Commission also contends that the district court abused its discretion in allowing Medigen to amend its complaint to add a cause of action under 42 U.S.C. § 1983 (1988).[3] The practical effect of this amendment was to allow recovery of attorney's fees.
 
 
 16
 Under Federal Rule of Civil Procedure 15(a), once a responsive pleading has been served, "[a] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Although the decision whether to grant leave rests within the sound discretion of the district court, National Bank v. Pearson, 863 F.2d 322, 327 (4th Cir.1988), the federal rules strongly favor granting leave to amend. As the Supreme Court has noted:
 
 
 17
 In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, "be freely given."
 
 
 18
 Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 19
 The Commission's primary argument is that Medigen did not amend its complaint until six months after the decision in Dennis and days before the commencement of trial. They also urge that Medigen could have asserted the § 1983 action in its original complaint. We agree that Medigen could have asserted its claim earlier. Adding the § 1983 claim, however, did not change the substance of the case, did not require additional discovery, and did not prejudice the Commission. See Nance v. Gulf Oil Corp., 817 F.2d 1176, 1179-80 (5th Cir.1987) (holding that district court did not abuse its discretion in allowing amendment to complaint on the eve of trial where no prejudice was shown). It merely provided a vehicle for recovery of attorney's fees. Even if the dilatory amendment amounted to "undue delay," we cannot say in this context that the district court abused its discretion in allowing it.
 
 
 20
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The parties agree that the Medical Waste Act does not substantially change the previous certification requirement and that the merits of this action should be decided under the statute
 
 
 [2]
 Section 20-5J-10(b) also provides that carriers holding certificates of convenience and necessity for the transportation of solid waste at the time the Medical Waste Act was passed may obtain a certificate of convenience and necessity for the transportation of infectious medical waste without making an additional showing of public convenience and necessity
 
 
 [3]
 At the time Medigen filed suit, there was a split in authority regarding whether claims for violations of the Commerce Clause could be brought under § 1983. The Supreme Court resolved this division of authority in Dennis v. Higgins, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991), holding that Commerce Clause violations were actionable under § 1983